THE UNION STOVE & MACHINE WORKS V. J. D. CASWELL *et al.*

PRINCIPAL AND SURETY—*Extension of Time to Pay Debt—Release of Surety.* Where property is sold, and the purchaser agrees to pay the consideration therefor, or a portion thereof, to a creditor of the vendor, the purchaser, as between himself and the vendor, becomes the principal debtor, and the vendor only a surety; and if the creditor afterward and because of this arrangement accepts the purchaser as a debtor, he must accept him in the same manner, and as his principal debtor, with the vendor only as a surety; and if the creditor then by a valid agreement with the purchaser, and without the consent of the vendor, extends the time for the payment of the debt, he will release and discharge the vendor.

*Error from Reno District Court.*

ACTION by *Smedley Darlington* against *John D. Caswell, Sarah J. Caswell,* his wife, and the *Union Stove & Machine Works,* on a note and real-estate mortgage. The defendant company claimed a judgment lien on the mortgaged lands. On the latter claim there was a verdict and judgment for the Caswells, and the defendant company brings error.

*R. F. McGrew,* for plaintiff in error.

*Charles H. Apt,* and *Bowman & Bucher,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was originally an ordinary action upon a promissory note and a real-estate mortgage, brought in the district court of Harvey county by Smedley Darlington, the payee and mortgagee, against John D. Caswell and Sarah J. Caswell, husband and wife, the payers and mortgagors, to recover the sum of $866.50 and interest. The plaintiff also made the Union Stove & Machine Works, a corporation of Leavenworth, Kas., a party defendant. As the plaintiff's claim seems to have been admitted by all the parties, and no claim of error is assigned as against him, it will not be neces-

44—48 KAS.

sary to again mention his name. The Union Stove & Machine Works answered, setting forth among other things a cause of action against John D. Caswell for $807.82, and to enforce an alleged lien upon the real estate in question, subject, however, to the plaintiff's lien, which cause of action so set forth by the Union Stove & Machine Works was founded upon an alleged judgment rendered in its favor and against Caswell on December 8, 1886, in the district court of Pratt county, for the sum of $963.99, and a transcript thereof filed in the office of the clerk of the district court of Harvey county on December 20, 1886, upon which judgment a payment was admitted to have been made of $214. Among other allegations contained in this answer are the following:

"That there was paid on said judgment the sum of $214 on the 8th day of June, 1887; that there is still due and unpaid on said judgment the sum of $807.82, after allowing all credits on the same."

The defendants, the Caswells, replied to this answer, admitting the judgment, but alleging that it had been paid and satisfied in the following manner, to wit:

"Said John D. Caswell and Sarah J. Caswell further allege, that since the rendition of said judgment, and on December 12, 1886, one William Fisher, being then and there indebted to said Caswell in a sum greater than the amount of said judgment, assumed the payment of the same, and the said Union Stove & Machine Works took and accepted the said William Fisher therefor in full payment and satisfaction of said judgment, taking from the said William Fisher a note for the same secured by both real and chattel mortgage, and that said Union Stove & Machine Works has since foreclosed said mortgage by an action of replevin in the district court of Pratt county, Kansas; that by reason of the premises aforesaid said judgment has been fully satisfied, and said Caswells released and relieved from the payment of the same."

The defendants, the Caswells, with leave of court filed the following amendment to their reply, to wit:

"That said indebtedness of said William Fisher to said J. D. Caswell arose in this manner: That on or about November 27, 1886, said J. D. Caswell sold and conveyed his stock of

merchandise and business house and lot in Saratoga, Pratt county, Kansas, to one William Eastland, who, as a part consideration therefor, assumed and promised to pay a note of the said J. D. Caswell to the Union Stove & Machine Works, which note was secured by a mortgage upon the business house and lot aforesaid, and also by a chattel mortgage upon the heating stoves of the stock of merchandise aforesaid; that afterwards, and on or about December 12, 1886, said William Eastland sold and conveyed said stock of merchandise to said William Fisher, and said business house and lot to Bertha Fisher, the wife of said William Fisher, subject, however, to the incumbrances placed on the same by the said J. D. Caswell to the Union Stove & Machine Works as aforesaid; and as a part of the consideration for the sale and transfer of said business house and lot and the stock of merchandise, the said William Fisher assumed the obligation of the said William Eastland as aforesaid, and promised and agreed to pay the indebtedness of the said J. D. Caswell to said Union Stove & Machine Works as aforesaid."

The Union Stove & Machine Works replied to the Caswells' reply by filing a general denial. Afterward the case was taken on a change of venue to the district court of Reno county, where it was tried upon the foregoing pleadings, and as between the Union Stove & Machine Works and the Caswells before the court and a jury, and the jury rendered a general verdict in favor of the Caswells and against the Union Stove & Machine Works, and also made certain special findings of fact, which verdict and findings, omitting formal parts, read as follows:

"VERDICT.

"We, the jury duly impaneled and sworn in the above entitled case, do, upon our oaths, find for the defendant J. D. Caswell."

"SPECIAL FINDINGS.

"1. Did the Union Stove & Machine Works ever agree to release the defendant Caswell from the payment of said judgment and take one Fisher for the payment of the same? Ans. Yes, they did through their agent, McGrew.

"2. If you find that the Union Stove & Machine Works accepted Fisher as paymaster of the judgment in question and released defendant Caswell from the payment of the same,

state what witness or witnesses testified to that fact? A. Note and mortgage.

"3. Was it not expressly agreed between the Union Stove & Machine Works Company and Fisher, at the time Fisher gave the chattel mortgage to the Union Stove & Machine Works Company, that it was given as additional security for the Caswell judgment, and that Caswell was not to be released from the payment of said judgment? A. It was not.

"4. If you answer the above question in the negative, then state fully what the agreement between Fisher and the Union Stove & Machine Works was at the time said mortgage was given? A. Note, mortgage, and extension of time."

The court rendered judgment in accordance with the general verdict; and the Union Stove & Machine Works, as plaintiff in error, brings the case to this court, making the Caswells the defendants in error.

The first alleged error is the ruling of the court permitting the Caswells to introduce evidence tending to prove payment and satisfaction of the aforesaid judgment. There was certainly no error in this, for although the Caswells admitted the judgment and did not specifically deny that anything was due thereon, yet they substantially alleged that the whole of it had been paid and was satisfied; and this, under the facts of the case, was better than a denial.

The next alleged error is, that the court permitted certain papers supposed to constitute copies of certain deeds, mortgages, etc., to be introduced in evidence. There does not appear to be any error in this. The originals of the papers were not within the custody or the control of the Caswells, and the copies introduced in evidence seem to have been properly certified copies, and they were introduced in evidence under § 372 of the civil code. (*Hammerslough v. Hackett*, 30 Kas. 58.)

The next alleged error is the overruling of the demurrer of the Union Stove & Machine Works to the evidence of the defendants Caswell. The substantial question presented by the demurrer to the evidence was, whether the evidence of the Caswells proved their alleged defense, that the aforesaid

judgment had been paid and satisfied. It is not necessary for us to consider this question, for after the overruling of the demurrer much additional evidence was introduced, and the Union Stove & Machine Works again, by a motion for a new trial, raised the broader question whether, upon the whole of the evidence introduced on the trial, the Caswells' defense was proved or not. We shall consider only this broader question raised by the motion for the new trial. Taking all the evidence together, and it proves substantially among others the following facts: John D. Caswell was a retail dealer in hardware, stoves, tinware, etc., at Saratoga, in Pratt county; but he owed the Union Stove & Machine Works a large amount of debt, for which his real estate and some of his personal property were mortgaged, and for which debt the aforesaid judgment was rendered in that county. The judgment was also for the sale of the mortgaged real estate. Caswell sold this property and business to William Eastland, and Eastland assumed and agreed to pay Caswell's debt to the Union Stove & Machine Works. Afterward Eastland sold the property and business to William Fisher, and Fisher assumed and agreed to pay the aforesaid debt. Afterward the Union Stove & Machine Works procured an execution to be issued upon said judgment, and R. F. McGrew, an attorney and agent of the Union Stove & Machine Works, with N. W. Magruder, the under-sheriff of the county, who was holding the execution, went to the place of business of Fisher to levy upon the property, but finally Fisher gave his negotiable promissory note, dated December 17, 1886, to the Union Stove & Machine Works, for $975, due in 10 days, and also executed a chattel mortgage to the Union Stove & Machine Works upon his entire stock of hardware, stoves, etc., to secure the payment of the note, and no levy was made, and the execution, by order of McGrew, was returned to the court. This mortgage included the property which had already been mortgaged by Caswell to the Union Stove & Machine Works and much other property. In all these transactions the Union Stove & Machine Works was repre-

sented by McGrew. Three days after the execution of this note and mortgage, to wit, on December 20, 1886, the Union Stove & Machine Works, by its agent, McGrew, filed a transcript of the judgment in the office of the clerk of the district court of Harvey county, in accordance with the provisions of § 419 of the civil code, for the purpose that the judgment should become a lien upon all Caswell's real estate in Harvey county, and so that the Union Stove & Machine Works could enforce the judgment against Caswell's real estate in that county. This note and mortgage were given, according to the testimony of McGrew and Fisher, as additional security for the debt owing by Caswell to the Union Stove & Machine Works and evidenced by the judgment. Afterward the Union Stove & Machine Works replevied the mortgaged property from Fisher. Fisher gave a redelivery bond and retained the property, and carried on his business for some time, but afterward judgment was rendered against him in the replevin action for a return of the property or its value, to wit, $975, and costs, and he delivered the property to the Union Stove & Machine Works. Fisher testified that the replevied property was worth about $1,500, and his evidence upon this subject was not contradicted by the testimony of any other witness. There is nothing in the case further than the above showing that the judgment of the Union Stove & Machine Works against Caswell has ever been fully paid or satisfied, and nothing further than the above showing that the Union Stove & Machine Works ever released or agreed to release Caswell, or ever took or agreed to take Fisher as their debtor in the place of Caswell; but the evidence, so far as it goes, shows affirmatively that the note and mortgage taken by the Union Stove & Machine Works from Fisher were taken as additional security for the debt owing by Caswell to the Union Stove & Machine Works, and that the Union Stove & Machine Works did not intend to release either the judgment or Caswell.

Under the evidence introduced in this case, it is claimed by the Union Stove & Machine Works that the foregoing judg-

ment in its favor and against the Caswells has never been paid
or satisfied or released, but is still in full force and effect;
while on the other side it is claimed, first, that under the facts
of this case such judgment had been fully satisfied by pay-
ment; but that if it had not been satisfied in that manner, then,
second, that it has been satisfied by a release and discharge in
the following manner, to wit: That by the transactions had
between Caswell, Eastland, and Fisher, and as between them-
selves Fisher became the principal debtor and Caswell became
only a surety, and that, by the recognition on the part of the
Union Stove & Machine Works of Fisher's liability to it for
Caswell's debt, the Union Stove & Machine Works made
Fisher its principal debtor and converted Caswell into only a
surety, and that by accepting the foregoing note and chattel
mortgage from Fisher to itself, it extended the time for the
payment of the debt from Caswell to itself; and thereby, un-
der the rules of law with respect to principal debtors and
sureties, Caswell, who was then only a surety, was released
from the payment of the debt, and thereby the judgment was
also released, discharged and satisfied so far as it affected
Caswell or his property. Within these antagonistic claims on
the part of these contending parties are involved many ques-
tions of law, with respect to which the authorities are diverse
and conflicting; while, with respect to others of the questions
involved in the case, the authorities are harmonious.

Some of the questions involved in this case have already
been settled and determined by this court, while others have
not. In all cases where two persons have made a contract for
the benefit of a third, or where an owner of property has sold
it upon an agreement that the purchaser should pay the con-
sideration therefor or a part thereof to a creditor of the vendor,
some of the questions have been settled by this court. (*Manu-
facturing Co. v. Burrows*, 40 Kas. 361, *et seq.*, and cases there
cited; *Mumper v. Kelley*, 43 id. 262.) Also some of the ques-
tions with respect to the rights of sureties where the creditor
and principal debtor have extended the time for the payment
of the debt have also been settled by this court. (*Rose v. Wil-*

*liams,* 5 Kas. 483; *Hubbard v. Ogden,* 22 id. 363.) But there are still many other questions remaining to be settled. All, or very nearly all, the authorities agree that where a vendor of property and the purchaser agree that the consideration therefor, or a part thereof, shall be paid to the creditor of the

Vendor and purchaser; principal and surety.

vendor, the purchaser, as between these two parties, will become the principal debtor and the vendor be transformed into a mere surety. But no transaction or agreement of this kind or of any other kind had between the vendor and the purchaser alone can affect or abridge any of the rights of the creditor. He may stand upon his absolute legal rights, if he chooses to do so, looking only to the vendor as his debtor. With his consent, however, his rights may be greatly affected. With his consent the original debt may be extinguished absolutely, and the purchaser alone become liable to him. Or the three parties together may modify their rights in any manner and to any extent as they may agree. With the creditor's consent, the vendor who was the original debtor may undoubtedly be made only a surety and the purchaser be made the principal debtor, but of course it takes his consent either expressly or impliedly.

One of the questions then arising is as follows: Can the creditor recognize the purchaser's liability to him at all without at the same time recognizing it as it really and in fact exists at the time as between the vendor and the purchaser? We would think not, and we would think the weight of authority sustains this view. (*George v. Andrews,* 60 Md. 26; *Calvo v. Davies,* 73 N. Y. 211; *Paine v. Jones,* 76 id. 274; *Murray v. Marshall,* 94 id. 611; *Spencer v. Spencer,* 95 id. 353; *Fish v. Hayward,* 28 Hun, 456; *Metz v. Todd,* 36 Mich. 473; *Insurance Co. v. Hanford,* 27 Fed. Rep. 588.) There are cases which hold that in such a case both the vendor and purchaser may be treated by the creditor as principals, and neither merely as a surety. (*Boardman v. Larrabee,* 51 Conn. 39; *Corbett v. Waterman,* 11 Iowa, 87; *James v. Day,* 37 id. 164.) In that class of cases which holds that the purchaser becomes the principal debtor and the vendor merely a surety,

it is held that if the creditor enters into a valid contract with
the purchaser for the extension of the time for
the payment of the debt without the vendor's
consent, the vendor, who is merely a surety, is
released and discharged; while in that class of cases which
holds that both the purchaser and the vendor are principals,
it is held that an extension of the time for the payment of the
debt by the creditor as to either the vendor or the purchaser
will not release or discharge the other. We shall follow the
former class of cases, as we are inclined to think that both
the weight of authority and of reason is that way. Mr. Jones,
in his work on Mortgages, fourth edition, § 742, expresses the
doctrine as it relates to mortgage debts, as follows:

*Extension of time to pay debt; release of surety.*

"A purchaser having assumed the payment of an existing
mortgage and thereby become the principal debtor, and the
mortgagor a surety of the debt merely, an extension of the
time of payment of the mortgage by an agreement between
the holder of it and the purchaser, without the concurrence
of the mortgagor, discharges him from all liability upon it.
The holder cannot enlarge the time of payment and protect
himself by reserving his rights against the surety in the
agreement of extension. Such a reservation has no effect un-
less the mortgagor agree to it."

See also, upon the general subject of releasing the surety by
the extension of the time for the payment of the debt by the
creditor to the principal debtor: 2 Brandt, Sur. (2d ed.), §§ 359,
360, 363, 364, 369, 372, 373, 375.

With the views above expressed, the question then arises,
was the time for the payment of the debt in the present case
extended? The note and chattel mortgage taken by the
Union Stove & Machine Works from Fisher were not to be
paid or to be due for 10 days after their date. They were
intended, however, by the Union Stove & Machine Works to
be taken only as additional security. Now it is true that any
kind or any amount of additional or collateral security may
be taken by the creditor without discharging a surety on the
original debt, provided the time for the payment of the orig-
inal debt is not extended. But was that the case in the pres-

·ent case? If it was, and if the time for the payment of the original debt was not extended, then of course the vendor, ·Caswell, was not released; but if the time for the payment of the original debt was extended, then the vendor, Caswell, is ·released. Now Fisher was the principal debtor with regard to the original debt, and was not the time for the payment of *all debt* extended as to him? Could the Union Stove & Machine Works have sued Fisher for the purpose of collecting *any debt* prior to the expiration of the 10 days given by the ·note and mortgage? We must answer this question in the negative. (2 Brandt, Sur., 2d ed., §§ 363, 364.) And answering this question in the negative, then would not Caswell, as the surety, be discharged? This question we think must be .answered in the affirmative. Upon questions of this kind it is possible, however, that the authorities are not entirely harmonious, but we think the weight of authority and of reason is as we have intimated. (See the authorities above cited; also *Insurance Co. v. Randall*, 71 Ala. 220; *Kane v. Cortesy*, 100 N. Y. 132; *Cumming v. Bank of Montreal*, 15 Grant, Ch. ·686.) We think it must be held, under the facts of this case, that Caswell was· discharged, and that by his discharge the judgment held by the Union Stove & Machine Works against him was also discharged, released, and satisfied; and probably ·there was no injustice in this. The Union Stove & Machine Works probably had sufficient security for its debt against Caswell without recognizing or accepting Fisher as its debtor at all, as it voluntarily did. Caswell, with all his property subject to execution, was liable. Besides, the Union Stove & Machine Works had a chattel mortgage upon a portion of Caswell's stock in trade, which stock in trade was transferred first to Eastland and then to Fisher; and also had a real-estate mortgage upon the real estate where the goods were kept. But the Union Stove & Machine Works voluntarily chose to recognize and accept Fisher as its debtor, and it thereby under the law made him its principal debtor, and from him it obtained additional security which would seem to be ample. It procured a chattel mortgage upon all Fisher's stock in trade,

and afterward replevied it from him; and Fisher, its own witness, testified that the replevied property was worth about $1,500, while the judgment against Caswell, before any payments were made thereon, amounted to only $963.99. This property was probably largely wasted by the transactions had between the Union Stove & Machine Works and Fisher, which perhaps would not have been the case except for the voluntary intermeddling by the Union Stove & Machine Works.

Before closing this discussion, it would perhaps be well to quote a portion of § 1312 of 2 Daniel on Negotiable Instruments (4th ed.), as follows:

"The principle that whatever discharges the principal discharges the surety is of extended application, and it is operative whenever anything is done which relaxes the terms of the exact legal contract by which the principal is bound, or in anywise lessens, impairs, or delays the remedies which the creditor may resort to for its assurance or enforcement. For, whenever the creditor relaxes his hold upon the principal debtor, he impairs the hold upon him which the surety would acquire by substitution in his place on making payment; and good faith and fair dealing require that the surety should not be exposed to the injuries which might thus be inflicted upon him. In the immense majority of cases the act done does not actually damage the surety a shilling, yet the doctrine is so firmly established that only legislative enactment can change it."

We have now considered every substantial question in this case. There are other questions presented by counsel's briefs; but with the views that we entertain we do not think that it is necessary to discuss them.

The judgment of the court below will be affirmed.

All the Justices concurring.