Mulvane v. Sedgley.

P. I. Mulvane *et al.* v. Nellie P. Sedgley *et al.*

No. 11,869.*   (64 Pac. 1038.)

SYLLABUS BY THE COURT.

1. Limitation of Action—*Note and Mortgage.* When the relation of principal and surety existing between mortgagors and a purchaser of mortgaged property, who assumed and agreed to pay the mortgage, is recognized and accepted by the mortgagee, and the cause of action against the purchaser or principal becomes barred by the statute of limitations, an action against the mortgagors or sureties on the notes and to foreclose the mortgage is also barred.

2. ———— *Principal and Surety.* The facts examined, and held

*For opinion by court of appeals, see 61 Pac. 971.—Rep.

sufficient to warrant the court's declaring, as a matter of law, the mortgagee to have accepted the relation of principal and surety existing between the purchaser and mortgagors.

Error from court of appeals, northern department; JOHN H. MAHAN, ABIJAH WELLS, and SAMUEL W. MC-ELROY, judges.   Opinion filed May 11, 1901.   *In banc.* Reversed.

*Quinton & Quinton,* for plaintiffs in error.
*Frank H. Foster,* for defendants in error.

The opinion of the court was delivered by

POLLOCK, J. :   On the 15th day of April, 1887, plaintiffs in error, P. I. Mulvane, Caroline J. Mulvane, J. A. Munk, and Emma S. Munk, made and delivered to one Anna J. Hentig their two promissory notes in the sum of $600 each, due and payable at the First National Bank of Topeka, Kansas, in one and two years from the date thereof, secured by mortgage on real estate in the city of Topeka, of which, at the time, they were owners.   These promissory notes appear thereafter to have been transferred to one James Hentig, and by James Hentig to the plaintiff in this action. The same were given as evidencing the purchase-price to be paid for the mortgaged property.   Thereafter, and on the 12th day of December, 1887, plaintiffs in error sold and conveyed the mortgaged premises to one A. L. Williams by deed of general warranty, in which said deed Williams expressly assumed and agreed to pay the mortgage debt as a part of the purchase-price thereof.   Thereafter, but before the statute of limitations had run, plaintiffs in error departed from the state of Kansas and have remained non-residents.   The promissory notes were left by James Sedgley with one John R. Mulvane, in the city of To-

Mulvane v. Sedgley.

peka, for collection, and the same have continued to remain in the hands of said John R. Mulvane from about the date of the execution thereof to the date of the commencement of this action, except the period of about one year, when the same were in the hands of attorneys representing the owner thereof.

On the 27th day of March, 1890, John R. Mulvane wrote James Sedgley, then the owner of said notes, informing him of the purchase by Williams of the mortgaged property and his assumption of the debt, as follows:

"The notes you speak of, made by Mrs. Munk and Caroline Mulvane, are perfectly good. The property has been bought by one A. L. Williams, attorney of the Union Pacific Railway Company, who has assumed the payment of the notes. . . . The facts are, the makers are perfectly good and the properties, in addition, are first mortgages; hence, while we have urged payment of interest as a matter of business, not that we hesitated about the security, we will press it again."

Again, on May 25, 1891, John R. Mulvane wrote James Sedgley as follows:

"I am sorry for the delay in that Catherine Mulvane and Mrs. Munk note. They sold the property to Mr. Williams, who is attorney for the Union Pacific railroad. He assumed the payment of these notes. He is expecting a big fee through the foreclosure of the C. K. & N., and has promised to-day that as soon as he gets the money he will pay. This must be very soon. In the meantime, I have notified Doctor and Mrs. Munk that they must pay the paper. They have asked me to wait a little while on Mr. Williams, and if he does not pay then they will take it up. It is perfectly good and you are running no risk whatever of loss."

On May 27, 1897, Mulvane wrote plaintiff as follows:

"I am just from Williams's office. Made the proposition some time ago to deed you the property. This he has agreed to do. If he will deed the property then I will look up the taxes. . . ."

In reply to this plaintiff wrote Mulvane July 23, 1897:

"In your favor of May 27 you say Mr. Williams has agreed to deed you the property and you will look up the taxes after he has done so. If you have secured from Mr. Williams a deed to the property to me, please forward deed to me. If you have not yet got title to the property for me, please forward me by return mail all the papers relating to the loan."

After the purchase of the property, and on the 30th day of October, 1891, Williams made a payment upon one of said promissory notes, the last due, of $500. Williams has at all times been a resident of the state of Kansas and the city of Topeka, being absent from the state of Kansas, however, about ten weeks in each year during such time.

In the year 1896 John R. Mulvane made a proposition to Williams, the purchaser, that if he would convey the real estate mortgaged in satisfaction of the promissory notes that such conveyance would be accepted, which Williams agreed to do. Mulvane prepared a deed of general warranty from A. L. Williams and wife to Nellie P. Sedgley, and handed it to Williams, who signed it but did not acknowlege the same. The wife of A. L. Williams did not execute the deed, nor was it, after the signing thereof, returned to Mulvane.

This suit was brought by defendant in error, Nellie P. Sedgley, on the 28th day of August, 1897. Thereafter, on the 23d day of July, 1898, by leave of court,

Mulvane v. Sedgley.

she filed an amended petition making defendant in error, A. L. Williams, party defendant therein, alleging his purchase of the mortgaged premises, his assumption and agreement to pay the mortgage debt, and praying a judgment against him for the amount of the notes. A summons was issued, and served on Williams, indorsed "Suit brought for the recovery or money," stating the amount.

To this amended petition plaintiffs in error answered, admitting the execution of the notes and mortgage, the conveyance of the property to Williams, his assumption and agreement to pay the mortgage debt, pleading the bar of the statute of limitations as to Williams, and, as a consequence arising from the relation of principal and surety created by the deed of conveyance from plaintiffs in error to Williams and his assumption of the mortgage debt, the bar of the statute of limitations as to plaintiffs in error. They also alleged the agency of John R. Mulvane, the agreement between John R. Mulvane, as agent, and A. L. Williams to accept a deed on behalf of plaintiff, Nellie P. Sedgley, in satisfaction of the mortgage debt, and the execution of such deed by Williams. Plaintiff replied, denying the agency of John R. Mulvane, except for the purpose of receiving payment on said promissory notes, which reply was duly verified. The defendant A. L. Williams answered, pleading the statute of limitations and the agreement to transfer the property in satisfaction of the mortgage debt. Thereafter, and on the 30th day of December, 1898, the plaintiff, by leave of court, struck out all allegations in her amended petition of the assumption of the debt by Williams.

At the conclusion of the evidence upon the trial, defendants below, here plaintiffs in error, moved the court

to instruct the jury to return a verdict in their favor, which motion was denied and exception saved. The jury returned a verdict in favor of the plaintiff and against all of the defendants save A. L. Williams, for the amount of the mortgage debt. Upon this verdict the judgment of the court was entered, foreclosing the mortgage and decreeing a sale of the property in satisfaction of the same. From this judgment defendants below prosecute this proceeding in error.

It is conceded that the statute of limitations has not run in this case as to the Mulvanes and Munks, on account of their absence from the state. But it is earnestly contended by counsel for plaintiffs in error that, as to Williams, the first note is clearly barred by the statute; and, as the last payment upon, or recognition of, the second note was on October 30, 1891, and as the amended petition making Williams a party was not filed until the 23d day of July, 1898, and as the statute did not cease to run as to Williams until he was made a party defendant in the suit, and allowing an absence of ten weeks from each year, that the note last due was also barred as to Williams at the date of filing the amended petition to which Williams was made a party. This contention we believe and shall assume to be true.

Upon this hypothesis, it is further contended that, as between the Mulvanes and Munks on the one hand and Williams on the other, by the purchase of the property and the express assumption of the mortgage debt, Williams became the principal debtor and the Mulvanes and Munks sureties for Williams.

Upon these premises, it is contended that as the statute of limitations has barred the right of recovery by the creditor against Williams, the principal, the right to recover from the sureties necessarily follows;

that where there is no liability of the principal there can be no liability of the surety. While the relation of principal and surety undoubtedly exists in this case, as between Williams, the grantee, and the Mulvanes and Munks, the grantors, in the deed of conveyance of the property by reason of the express assumption of the indebtedness in the deed by Williams, whether this relation of principal and surety extends to and is binding upon the mortgagee depends upon the answer to the question, Did the mortgagee consent to and accept this relation as binding upon her? If not, clearly she may disregard the relation and recover upon the notes as against the makers, in whose favor it is admitted the statute has not run, and subject the mortgaged property to the payment of the debt. Whether the mortgagee assented to and accepted the relation of principal and surety existing between Williams and the Mulvanes and Munks is a question of fact. This question was submitted to the jury and by the jury found against plaintiffs in error.

From the undisputed evidence in the record, it is clear that John R. Mulvane acted as the agent of the owner of the notes; that he held possession of the notes for the owner; that he knew of the purchase of the property by Williams and his assumption of the mortgage debt; that he wrote the owner of the notes, James Sedgley, informing him of the purchase of the property and assumption of the debt by Williams; that Williams paid $500, to be applied upon the mortgage debt; that Mulvane often requested payment of Williams, and that Williams stated to Mulvane that he would make payment of the same; that Mulvane agreed with Williams to accept a conveyance of the property in satisfaction of the debt; that a deed to

the property was prepared by Mulvane and signed by Williams but not returned to Mulvane; that plaintiff was informed of this fact; that suit was brought by plaintiff against Williams, in which a personal judgment was asked on his assumption of the mortgage debt.

In view of these facts, as shown by the record, it is the opinion of the majority of the court that, as a matter of law, the trial court should have sustained the motion for judgment in favor of defendants; that, as a matter of law, from the undisputed facts appearing in the record, plaintiff recognized and accepted Williams as her debtor, and hence the relation of principal and surety existing between the mortgagors and the purchaser of the property was extended to and became binding on the plaintiff. As the cause of action against Williams by plaintiff, upon his assumption of the debt, is barred by the statute of limitations, plaintiffs in error have become released from their obligation. (*Stove Works v. Caswell*, 48 Kan. 689, 29 Pac. 1072.)

It follows that the judgments of the court of appeals and of the district court must be reversed, and it is so ordered.

JOHNSTON, SMITH, GREENE, JJ., concurring.

ELLIS, J. (concurring specially) : Since the decision in *Stove Works v. Caswell*, supra, it has been properly accepted as the law in this state that

"Where property is sold, and the purchaser agrees to pay the consideration therefor, or a portion thereof, to a creditor of the vendor, the purchaser, as between himself and the vendor, becomes the principal debtor, and the vendor only a surety; and if the creditor afterward and because of this arrangement accepts the

purchaser as a debtor, he must accept him in the same manner, and as his principal debtor, with the vendor only as a surety."

The rule that if the creditor accepts the purchaser as a debtor at all he must adopt the relation which then exists between such purchaser and his vendor, and be bound by it, does not prevail in some of our sister states, and if it were an original proposition here I might hesitate to favor its adoption, although quite as cogent reasons exist for as against it. However, for nearly a decade that rule has prevailed in Kansas without complaint from the people, the bench, or the bar, and no effort has been made to abrogate it by legislative enactment. I feel bound to sanction the observance of a decision which has been generally acquiesced in for so long a period.

Whether a surety should be released from his obligation because a creditor voluntarily allows a debt to become barred by the statute of limitations against the principal debtor is also a proposition about which the authorities disagree. The general doctrine is that a contract of suretyship "is accessory to an obligation contracted by another person, either contemporaneously or previously or subsequently. It is of the essence of the contract that there be a subsisting valid obligation of a principal debtor. Without a principal there can be no accessory; and by the extinction of the former the latter becomes extinct. This results from the nature of the obligation of suretyship." (*Russell v. Failor*, 1 Ohio St. 329, 59 Am. Dec. 631, citing Burge, Suretyship, 3, 6; Theobald, Prin. & Sur. 2.)

Mr. Brandt, in his work on Suretyship and Guaranty, volume 1, section 145, cites the following law:

" 'It would be as difficult for me to conceive of a

8—63 KAN.

Mulvane v. Sedgley.

surety's liability continuing after the principal obligation was discharged as of a shadow remaining after the substance was removed.' . . . 'It is a corollary, from the very definition of the contract of suretyship, that the obligation of the surety being accessory to the obligation of the principal debtor or obligor, it is of its essence that there should be a valid obligation of such principal, and that the nullity of the principal obligation necessarily induces the nullity of the accessory. Without a principal there can be no accessory. Nor can the obligation of the surety as such exceed that of the principal.' "

Upon this proposition the authorities are in general accord. An exception, however, is sought to be made and is generally regarded as existing when the principal is discharged from his obligation by the mere operation of law, and some of the courts and text-writers hold that where the principal is released by reason of the bar of the statute of limitations, the surety is still bound, because, they say, the principal has been released by the operation of law. I cannot give my assent to such an application of the rule. There is a wide distinction between the release of a principal debtor in a court of bankruptcy and his release as the result of the laches of the creditor by the interposition of the statute of limitations. In the first case, without any neglect or wrong on his part, the creditor has been prevented from proceeding against or collecting from the principal debtor, and, in his failure to do so, he has committed no act in derogation of the rights of the surety. In the other case, by failing to proceed against the principal debtor within the time prescribed by the law, he has consented to his release, to the injury of one whose obligation to pay is, in effect, always dependent upon the failure of his principal to do so.

The reason for the rule that a surety is not dis

charged when his principal is relieved from his obligation by operation of law is that the creditor has, without his fault or neglect, been deprived of his right to recover the debt from the latter.   The author last quoted cites with approval the following from the text of the decision in *Phillips v. Solomon*, 42 Ga. 192, which was a case where the principal had been discharged in bankruptcy.   The court said:

"The discharge of the principal, which discharges a surety, must be a discharge by some act or neglect of the creditor, and a discharge by operation of law being, as it is, against the consent and beyond the power of the creditor, does not discharge the surety."

It ought to be conceded that where, without justification or excuse, a creditor allows the statute of limitations to run against the obligation of a principal debtor, it cannot truthfully be said that the latter has been discharged "against the consent" and by means "beyond the power of the creditor" to prevent or control.

In the case of *Bridges, Administrator, v. Blake et al.*, 106 Ind. 332, 6 N. E. 833, the court held:

"The extinguishment of the engagement of the principal, however accomplished, releases the surety from liability, and if the debt of the former is barred by the statute of limitations, a mortgage given by the surety to secure it is not enforceable, although not barred."

The authorities which hold that the surety is not released when the creditor allows the debt to become barred by the statute of limitations as to the principal ignore any consideration of the duties which the creditor owes to the surety, and fail to attach due importance to the fact that if such a rule were to obtain it would result in imposing many hardships upon the

latter, from all of which, on account of the nature of his undertaking, he should be exempt.

Without entering at length upon a discussion of the matter, I am content with the reasoning of the court in *Auchampaugh, Administrator, v. Schmidt*, 70 Iowa, 642, 27 N. W. 805, which case, upon its facts, presents a strong analogy to the one at bar. The court said :

"We come, then, to the question raised by the answer and the admitted evidence of suretyship, and that is as to whether a claim which is barred by the statute of limitations as against the principal debtor is *by reason thereof* barred also as against a surety. In answer to this question, we have to say that we think that it is."

The court, after reciting the facts and showing that by reason of his absence from the state the statute had not run as against the surety, further said :

"It would not be denied that a surety upon a note may set up any meritorious defense which the principal, if sued, might set up in his own behalf. Now, when the statute of limitations has run as against the principal, the law excuses him from setting up any meritorious defense which he may have, and allows him to rely upon the technical defense of the statute alone. The theory is that he was not under obligations to preserve any longer the evidence of his meritorious defense, if he had any, and so the court will not inquire whether he had such defense or not. The statute has been very properly denominated the statute of repose. As the surety is allowed to set up any meritorious defense which the principal might have set up, we are not able to see why he should be required to preserve the evidence of such defense after the principal was not bound to do so. Again, when a surety pays a debt, it is his right to look to the principal for reimbursement. But a surety paying a debt, after it had become barred as against the principal, would be remediless. Now, we do not think that a creditor, by his own dilatoriness, should be allowed

to put the surety in such position. It is not a full answer to say that a surety might have protected himself. It may be conceded that he might. But, practically, sureties often overlook their obligations if their attention is not called to them, and we do not think that the just protection of the rights of the creditor requires that we should hold so strict a rule against them as that for which the plaintiff contends."

Having thus indicated some of the principal reasons sustaining the position which I think the court ought to assume upon the controlling propositions in this case, I concur in a judgment of reversal.

POLLOCK, J. (dissenting) : I do not agree with either the reasoning employed or the conclusion reached in the opinion of the majority of this court. The question is important and its determination should find support in the well-recognized principles of the law and the adjudicated cases. As determined, it has neither.

It is conceded that Williams, by his purchase of the property and assumption of the debt, became, as between the mortgagors and himself, the principal debtor, and the mortgagors his sureties ; but this relation was created by an application of the principles of equity and not by any contract to that effect between the parties. After the purchase and assumption of the debt by Williams, the owner of the mortgage debt had a choice of remedies for its collection : A separate right of action against Williams upon his engagement of assumption ; or, a separate action against the mortgagors on the notes and to foreclose the mortgage ; or, a single action against the purchaser upon his assumption and the mortgagors on the notes and for a foreclosure of the mortgage ; or, a right first to exhaust the mortgaged property and the non-exempt

property of the mortgagors, and in a subsequent action recover any deficiency from the purchaser. (*Rouse v. Bartholomew*, 51 Kan. 425, 32 Pac. 1088; *Mfg. Co. v. Burrows*, 40 id. 361, 19 Pac. 809.)

It is also conceded that whether this equitable relation of principal and surety extended to and became binding upon the mortgagee is a question of fact. This question of fact, under appropriate instructions, was submitted to the jury and by the jury determined against the mortgagors. This court now holds that the action of the trial court in submitting this question of fact was error; that from the facts recited from the record it was incumbent upon the trial court to declare, as a proposition of law, not only that the equitable relation existing between the mortgagors and purchaser extended to and became binding upon the mortgagee, but also, as the right of action for the collection of the debt from the purchaser, who has remained a resident of the state, liable to action at any time on his assumption, is barred by the statute, the creditor's right of action on the notes and to foreclose the mortgage is also barred against the makers, in whose favor confessedly the statute has not run, on account of absence from the state.

This conclusion is erroneous on three grounds:

*First:* Williams may not plead the statute of limitations as to the foreclosure of this mortgage; nor can the mortgagors plead the statute through Williams. While Williams may plead the bar of the statute as to his personal liability to plaintiff arising from his engagement of assumption of the debt, yet, having taken title to the property in express recognition of plaintiff's mortgage and in subservience thereto, it does not lie in his power to avail himself of the statute in this action on the notes and to fore-

close the mortgage. The right to plead the statute being a personal right, the mortgagors cannot avail themselves of the same through Williams. This court, in *Waterson v. Kirkwood*, 17 Kan. 9, held:

"P. mortgaged his land to K., and then, after an action had accrued on the mortgage, but before the same was barred by the statute of limitation, left the state and has never returned. Just before he left he transferred his interest in the land to W. W. and K. have remained in the state, and a sufficient time has elapsed to bar all action on the mortgage, provided P. had also remained in the state. *Held*, that W. stands merely in the place of P., and therefore, as P. could not plead the statute of limitation in a suit on the mortgage, W. cannot." (See, also, *City of Fort Scott v. Schulenberg*, 22 Kan. 658; *Schmucker v. Sibert*, 18 id. 104, 26 Am. Rep. 765; *Sibert v. Wilder*, 16 id. 176, 22 Am. Rep. 280; *Pears v. Wilson*, 23 id. 346; *Ryan v. L. A. & N. W. Rly. Co. et al.*, 21 id. 367.)

In *Ordway v. Cowles*, 45 Kan. 447, 25 Pac. 862, it was held:

"The plea of the statute of limitations cannot be interposed by the holder of a tax title, to a note and mortgage not barred at the commencement of the action against the original mortgagor."

In the opinion this court said:

"We do not think that Ordway can avail himself of the statute of limitations. He claims under a distinct and independent title, in no way derived from the mortgagor. Generally, the plea of the statute of limitations is a personal privilege, and a third party cannot interpose the defense. (*Baldwin v. Boyd*, 18 Neb. 444, 25 N. W. 580; Wood, Lim., 1st ed., § 41; 10 A. & E. Encycl. of L. 710; 7 Wait, Act. & Def. 236; *Waterson v. Kirkwood*, 17 Kan. 9.) Walton, the maker of the notes and mortgage, could not successfully plead the statute of limitations, and we do not see by what process of reasoning we could reach the conclu-

sion that Ordway could, even if he had succeeded to the right to the land in question through Walton, which he did not; he certainly could obtain no greater right than Walton had. We think the statute can only be set up by Walton, or some one holding under him, and when it is not available for Walton, no other person can take advantage of it. It necessarily follows that because Walton never had the right no other person could avail himself of such right.''

*Second:* But assuming that Williams may plead the statute, and the mortgagors through Williams, and assuming the record does show by undisputed evidence all the facts stated in the opinion, the question arises, Do these facts standing admitted in the record, as a matter of law, constitute such an acceptance of the relation of principal and surety existing between Williams, the purchaser, and the Mulvanes and Munks, the makers of the notes, by Sedgley, the owner, as to bar her right of recovery as against the makers of the notes? This precise question has not been before this court for determination. It has been many times decided that had a valid extension of the time of payment been made by the owner of the notes, without the knowledge or consent of the makers, their release from liability would follow. The question now here for determination is a different one. In this case, before the court will be warranted in declaring, as a matter of law, that the relation of principal and surety existing between the mortgagors, the Mulvanes and Munks, and the purchaser of the property, Williams, extended to and became binding upon the mortgagee, Sedgley, there must exist, as a matter of law, a valid contract, by the terms of which the mortgagee agreed to accept the purchaser as her principal debtor and the mortgagors as her sureties only. In the absence of such an acceptance of the existing rela-

tion by agreement on the part of the mortgagee, she had the right to treat both the mortgagors and the purchaser as her debtors, and in the absence of other defenses to have judgment for the debt and decree of foreclosure as against both.   Undoubtedly the great weight of authority and the well-considered cases conclusively establish this doctrine.   (Jones, Mortg., 5th ed., §§ 741, 742; *Shepherd v. May*, 115 U. S. 505, 6 Sup. Ct. 119, 29 L. Ed. 456; *Cucullu v. Hernandez*, 103 id. 105, 26 L. Ed. 322; *James v. Day and Close*, 37 Iowa, 164; *Thompson v. Bertram*, 14 id. 476; *Corbett v. Waterman*, 11 id. 86; *Robertson v. Stuhlmiller*, 93 id. 326, 61 N. W. 986; *Waters v. Hubbard*, 44 Conn. 340; *Hebert v. Doussan*, 8 La. Ann. 267; *Spycher v. Werner*, 74 Wis. 456, 43 N. W. 161, 5 L. R. A. 414.)

In *Shepherd v. May*, supra, Mr. Justice Wood, delivering the opinion of the court, said:

"And if Walker had expressly promised May to pay the debt, that would not, without the assent of May, have converted Shepherd from a principal debtor into a surety merely. (*Cucullu v. Hernandez*, 103 U. S. 105, 26 L. Ed. 322; *Rey v. Simpson*, 22 How. 341, 16 L. Ed. 260.)   The only way in which Walker could become the principal debtor of May, and Shepherd the surety, was by the mutual agreement of all three."

Justice Miller, in *James v. Day*, supra, said:

"While upon a sale by Day of his interest in the land to Close, a valid agreement by the latter to pay the entire debt to plaintiffs would create the relation of principal and surety as between Close and Day, yet such agreement could not affect the mortgagees; as to them both Close and Day remain principals. (*Corbett v. Waterman*, 11 Iowa, 86; *Massie v. Mann*, 17 id. 131, 135, and cases cited.)   Both Close and Day were originally principal debtors.   They remain such as to the plaintiffs unless the latter, for a valid consideration, agreed to release Day, or to accept him as a surety only."

The case of *Robertson v. Stuhlmiller*, supra, is identically parallel with the case at bar. On the 1st of November, 1875, Stuhlmiller executed two promissory notes in the sum of $500, due one and two years from date, secured by mortgage on a city lot. Stuhlmiller conveyed the property to Jacob Coons. In January, 1887, Coons sold the mortgaged property to Chapman, who assumed and agreed to pay the mortgage. In January, 1880, Chapman conveyed the property to Fernbach, who assumed and agreed to pay the mortgage. Fernbach paid the interest on the notes from the year 1880 to the year 1889, and on the 13th day of April, 1888, paid $150, to be applied on the notes. After conveying the property, and before the statute of limitations had run, Stuhlmiller removed from the state, and remained a non-resident at the time action was brought. Robertson, the payee in the notes, brought his action against Stuhlmiller, Chapman, and Fernbach, asking a personal judgment against Chapman and Fernbach upon their assumption, and against Stuhlmiller upon the notes and for a foreclosure of the mortgage. Foreign summons was served on Stuhlmiller in the state of Missouri. He made no appearance. Fernbach and Chapman demurred to the petition, which demurrer was sustained. Plaintiff appealed. In the opinion the court said :

"But it is said that when Anselm Fernbach assumed and agreed to pay the mortgage debt he became as to the plaintiff a principal debtor, and that, as the debt assumed was then due, the statute of limitations commenced to run at that time. The demurrers were not general, but were based upon specific grounds. The theory which they present is that there was a novation by which Fernbach became the principal debtor and Stuhlmiller a surety only, and the claim that Fernbach was one of two or more principals seems to have been made for the first time in this

court, in argument.   When Fernbach assumed and agreed to pay the mortgage debt, he made it his own, and became the principal debtor, as between himself and Stuhlmiller.   *Corbett v. Waterman*, 11 Iowa, 87. But the relation of Stuhlmiller to the plaintiff depended upon the written agreement between them and, could not have been changed except by an agreement with the latter.   *Corbett v. Waterman*, supra ; *James v. Day*, 37 Iowa, 164 ; *Massie v. Mann*, 17 id. 132.   The acceptance by the plaintiff of money paid by Fernbach to apply on the notes did not in any manner change the relations of the parties, and nothing which could have had that effect is shown.   Therefore, there is no ground for the holding that, as to the plaintiff, Fernbach became the principal debtor, and that, if an action on the notes is barred as to him, it is also barred as to Stuhlmiller.   And the same conclusion must be reached if the two are regarded as principal debtors.   The fact that one of them continued to be a resident of this state until the right of action was barred as against him would not affect the liability of his coprincipal.   *Denny v. Smith*, 18 N. Y. 567 ; *Cutler v. Wright*, 22 N. Y. 476 ; *Caswell v. Englemann*, 31 Wis. 98 ; 13 A. & E. Encycl. of L. 745.''

After holding the action barred as to the personal obligation created by the assumption of the debt as against Fernbach and Chapman, the court proceeded :

''But the obligation of Stuhlmiller on the notes is valid, and the lien of the mortgage is still in force. The pleadings show that the plaintiff is entitled to a judgment for the amount of his claim as against the mortgaged premises, and to a foreclosure of his mortgage.   The interest of the Fernbach estate is junior to the lien of the mortgage, not because of the obligation of Fernbach to pay the notes, but because the title he acquired was subject to the mortgage.''

Some of the language employed in the opinion in *Stove Works v. Caswell*, 48 Kan. 689, 29 Pac. 1072, is in conflict with the view here expressed.   The lan-

guage there used, however, is purely *obiter dictum*, and a decision of the principle here under discussion was neither involved in nor necessary to a determination of that case, and the language there used to the contrary should be disapproved.

As no acceptance by agreement on the part of the mortgagee of the relation of principal and surety existing between the mortgagors and the purchaser is shown by the facts conceded to be admitted in the record, Sedgley could not only have commenced her suit against Williams as a principal debtor with the Mulvanes and Munks, as was done, but she might also have prosecuted such suit to judgment, and in the event it was determined from the evidence that a recovery as to Williams on his contract of assumption should not be adjudged on account of the bar of the statute of limitations, her rights as to the remaining debtors, the makers of the notes, would remain and in no manner be prejudiced by such determination.

*Third:* But suppose the facts found to exist are sufficient, as a matter of law, to extend the equitable relation of principal and surety existing between the mortgagors and the purchaser to plaintiff; and that, as a matter of law, it may be said from the facts that the plaintiff recognized and accepted the relations, Is the conclusion reached by the court in this case, that, as the statute of limitations bars a recovery against the purchaser upon his assumption, it also bars a recovery as against the mortgagors and to forclose the mortgage, sound?

The contract of a surety is an absolute promise that he will pay the debt of his principal. (*Campbell v. Sherman*, 151 Pa. St. 70, 25 Atl. 35.) It is conceded in this case that a valid debt did exist, for the payment of which both the mortgagors and purchaser were lia-

Mulvane v. Sedgley.

ble.   It is not contended that this debt has been paid or extinguished.   It is merely contended that as the statute bars a recovery from the principal the sureties are relieved from their contract to pay.   To relieve the sureties from their obligation to pay they must establish one of three facts :   (1) That the debt has been paid or extinguished ;   (2) a valid release or discharge ;   (3) or the bar of the statute of limitations as to themselves.   It is conceded the debt has not been paid.   It is also conceded the statute has not run as to the mortgagors, on account of their absence from the state.   The fact that the statute bars a recovery as against the principal does not extinguish the debt. Did the failure to bring the action upon the notes and to foreclose the mortgage, until the statute had run in favor of the purchaser upon his contract of assumption, release or discharge the mortgagors or the property?

It is held in all jurisdictions that indulgence of the principal or mere delay in bringing suit will not discharge a surety.   (*Barnes v. Mowry*, 129 Ind. 568 ; *Wright v. Yell et al.*, 13 Ark. 503, 58 Am. Dec. 336 ; *Hunt v. Bridgham*, 2 Pick. 581, 13 Am. Dec. 458 ; *Newell et al. v. Hamer et al.*, 4 How. [Miss.] 684, 35 Am. Dec. 415 ; *Martin v. Pope & Son*, 6 Ala. 532, 41 Am. Dec. 66.)

A surety is not discharged by failure of the creditor to present the claim to the administrator of the deceased principal within the time allowed by law. (*Minter and Gayle v. Br. Bank at Mobile*, 23 Ala. 762, 58 Am. Dec. 315 ; *Ashby et al. v. Johnston et al.*, 23 Ark. 163, 79 Am. Dec. 102 ; *Johnson v. The Planters' Bank*, 4 Sm. & M. 165, 42 Am. Dec. 480.)

In the case of *Willis & Bro. v. Chowning*, 90 Tex. 617, 40 S. W. 395, it was held that, although a debt

is barred against the principal, judgment may be entered against a surety if he remains liable thereon; and if he pays the debt a cause of action thereupon accrues in his favor against the principal, though the latter, because of the statute of limitations, was not at the time of such payment subject to an action in favor of the original payee.

In the case of *Bull v. Coe*, 77 Cal. 54, 18 Pac. 808, it was said:

"It is well settled in this state, as elsewhere, that mere delay of the creditor to proceed against the principal would not discharge the surety. (*Humphreys v. Crane*, 5 Cal. 173; *Critzer v. Mills*, 9 id. 22; *Hartman v. Burlingame*, 9 id. 557; *Williams v. Covillaud*, 10 id. 419; *People v. Jenkins*, 17 id. 500.) In extension of this principle it was held that the surety was not discharged, even if the delay of the creditor was such that his remedy against the principal became barred by limitation. (*Whitney v. Clark*, 17 Cal. 407.)"

In an exhaustive opinion, in *Sichel v. Carrillo*, 42 Cal. 493, the court said:

"The argument is that a mortgage is only an incident to the debt; that when the debt is paid, satisfied, or in any manner extinguished, the mortgage is also discharged or extinguished; that the mortgage cannot exist without a debt to support it, and that the debt, being barred by the statute on failure to present it to the administrator within the ten months prescribed, is extinguished, and the mortgage thereby discharged for the want of a debt to support it. There is, at least, one mistake in this argument in assuming that the statute of limitations *extinguishes* the debt. It is well settled, with reference to actions for moneys due on contracts, that the statute does not discharge the debt, or in any way extinguish the right or destroy the obligation, but only takes away a remedy. The debt remains unsatisfied and unextinguished. It is a sufficient consideration to support a new promise. (*Townsend v.*

*Jemison*, 9 How. [U. S.] 413 ; *Bulger v. Roche*, 11 Pick. 37 ; *Lincoln v. Battelle*, 6 Wend. 485 ; Ang. on Limit. 268, § 213.)  .  .  .  Thus, if two parties are jointly liable on a demand, and one dies, the demand would undoubtedly be barred as respects the estate of the deceased party by a failure to present the claim within the ten months prescribed ; but this would in no respect affect the right of action against the survivor.  The debt is not extinguished, paid, or discharged, nor is the cause of action barred as to the survivor.  A payment, or valid release or discharge, or extinguishment of the debt as to the deceased, no matter in what form it might be accomplished, would also be a payment, discharge or extinguishment as to the survivor, because the debt no longer exists.  Suppose Mrs. Carrillo had not been the wife of Rains, and, having no interest in the matter herself, had indorsed the notes in suit, intending to be security for their payment ; the notes had fallen due, the proper steps had been taken to charge her as indorser, Rains had subsequently died, and the holder had failed to present the notes to the administrator, and the claim had thereby been barred as against the estate, although four years have not elapsed since the making of the notes.  We apprehend it would not be claimed that an action could not be maintained against Mrs. Carrillo on her indorsement.  The bar did not attach to her contract, and the fact that she was a surety merely would not affect the question.  Her contract is still in force.  The failure to make the money out of the principal was the result of neglect—mere non-action on the part of the holder.  The principal might be involved, and the holder look only to the surety.  The surety might at any time have paid the demand and presented the claim herself, and thus protected herself.  This would have been her remedy.  The non-action of the holder, by which the claim became barred, would not discharge the surety.''

In the case at bar the mortgagors have had their right of action against the purchaser to compel a per-

formance of his contract of assumption ever since the maturity of the notes, even before payment of the debt by them, unless such right of action is lost by their laches. (Jones, Mortg. § 769; *Locke v. Homer,* 131 Mass. 93, 41 Am. Rep. 199.)

This was their remedy, and they cannot now avail themselves of the plea made. It follows that, even should the equitable relation of principal and surety existing between the mortgagors and the purchaser be properly extended to the mortgagee, and the statute of limitations prevent a recovery against the purchaser, the mortgagors, on account of non-residence from the state, remain personally liable and the property held subject to the lien of the mortgage. (*McLane v. Allison,* 60 Kan. 441, 56 Pac. 747.)

The proposition of the agent, Mulvane, to accept for his principal a conveyance of the property in satisfaction of the mortgage debt will avail plaintiffs in error nothing in this case. For, should it be held to have been within the scope of the agency and without the statute of frauds, until the proposition made by Mulvane was accepted by performance on the part of Williams, it remained a mere naked proposition, revocable at will by the maker. The bringing of the suit before performance was a revocation.

The judgments of the district court and of the court of appeals were right and should be affirmed.

DOSTER, C.J., and CUNNINGHAM, J., concurring in dissenting opinion.