# Richmond.

WELLS ET ALS. v. HUGHES' EX'OR.

January 12th, 1893.

1. APPLICATION OF PAYMENTS.—There was a judgment for balance on bonds executed by U as principal and W as surety, for price of land purchased by U at judicial sale. At re-sale property brought less than judgment. Payments made by U on bonds and proceeds of re-sale were applied to the purchase-money under the court's supervision, and with U's assent—

HELD:

    In action to enforce the judgment on land owned by W at its date, purchasers from W, with notice of the judgment, could not claim that said payments and proceeds were misapplied.

2. INDULGENCE TO PRINCIPAL.—Mere forbearance, without consideration, shown to principal, with no contract for definite delay or postponement—

HELD:

    Not to release the surety.

3. JURISDICTION—*Plea in abatement.*—Where a bill shows on its face matter proper for, and the parties are within, the jurisdiction of the court, exception for want of jurisdiction can only be taken by plea in abatement. Code, § 3260.

Appeal from two decrees of the hustings court for the city of Manchester, entered May 25th, 1889, and May 3d, 1890, respectively, wherein James D. Jones, as executor of John C. Hughes, deceased, and, as such, trustee of John Letellier, was complainant, and the appellants, Joseph Wells, Emanuel Matthews, John H. Matthews, and George T. Litchfield and Ida W., his wife, and others, were defendants.

The suit was brought to enforce the lien of a judgment for $2,666.67, with interest, recovered by the said Jones, in his

representative capacity and as commissioner of the circuit court of Albemarle county, at the October term, 1872, of the said court, against John J. Utz and Joseph Wells jointly, as principal and surety for the payment of purchase-money, evidenced and due by the bonds of the said Utz and Wells, for land purchased by the said Utz, under a decree of the circuit court of Albemarle county in the suit of *Hughes' Executor* v. *Letellier ;* which said judgment was docketed in Chesterfield county August 15th, 1873, as a lien upon lands then owned by the said Joseph Wells, which he thereafter sold and conveyed. The cause was referred to a commissioner for inquiry and report, and coming on further to be heard, May 3d, 1890, on the commissioner's report, and the evidence, &c., the court, by its decree of that date, sustained the said judgment as a lien upon the said lands in the hands of the petitioners, Matthews and Litchfield, vendees of said Joseph Wells, and ascertained the balance due upon said judgment, as of September 15th, 1879, to be $579.78, with interest from that date, and decreed a sale of the said land to satisfy it, in default of the payment of the said balance. From this decree the case is here by appeal.

*Charles L. Page*, for appellants.

*W. B. Pettit* and *T. M. Miller*, for appellee.

FAUNTLEROY, J., delivered the opinion of the court.

The facts of the case, material to be stated, are as follows :

A chancery suit was instituted in 1865 in the circuit court of Albemarle county by one John C. Hughes, as trustee for one John Letellier; and Hughes dying, the cause was revived, in 1886, in the name of James D. Jones as his

executor, who was directed and authorized by an order of the
said court to make sale of certain realty embraced within the
trust, and report his proceedings to court.   At a sale made in
execution of this order, in 1870, by the said Jones as commis-
sioner of the said court, John J. Utz became the purchaser of a
lot, with a coach-shop and appurtenances thereon, in the town
of Charlottesville, for the price of $5,000, one thousand dol-
lars of which was paid in cash, and for the balance he exe-
cuted three bonds, with Joseph Wells as security, in equal
instalments of the said balance of the purchase-money, with
interest from January 1st, 1870, payable, respectively, on the
1st day of July, 1871, 1872, and 1873; and the title to the
land was retained in the court.   The sale, with the bonds,
was duly reported to the court by the said Jones, commissioner
of sale, and the court duly confirmed the said report and the
said sale.   The first and second of the said purchase-money
bonds being due and unpaid, judgment was obtained thereon
in the circuit court of Albemarle county, at the October term,
1872, by the said Jones, obligee therein, against John J. Utz
and Joseph Wells, the joint obligors therein; and said judg-
ment was docketed in the clerk's office of the county court of
Chesterfield county on January 15th, 1873.   Various pay-
ments were made by Utz, the purchaser of the lot and the
principal obligor in the bonds, before the second bond fell
due; and these payments were credited on the first bond.
Various other payments were likewise made after the second
bond fell due, and before the third bond fell due; and these
payments were credited on the aggregate due on the first and
second bonds, or the judgment recovered thereon.   Various
payments were likewise made after the third bond fell due,
upon which judgment had likewise been obtained at the
February term, 1874, of the said circuit court of Albemarle
county; and these payments were credited on the aggregate
due and unpaid on the three bonds, or two judgments.   The

recovery of these judgments, and the said applications of the payments were reported to the court, and the accounts of the said Jones, the appellee, were approved by the court, and regularly settled in the suit pending in the said court of *Hughes' Executor* v. *Letellier*, by its decree of February 7th, 1877, showing a balance due of the said purchase-money of $2,746.90, as of January 18th, 1877, by John J. Utz, the said purchaser—" all of which [in the language of the said decree] is principal."

No other payments being made, the court, on October 12th, 1878, " ordered and decreed that James D. Jones, commissioner, shall proceed, as promptly as possible, to re-sell the property bought by said Utz, in accordance with the terms prescribed by the decree herein of May term, 1872." And, in obedience thereto, the said commissioner advertised it to be sold on the 21st day of December, 1878 ; whereupon, on the 5th day of December, 1878, Utz obtained an injunction restraining the said sale so advertised. At the February term, 1879, of the said court, a decree was entered, with the consent of the said Utz, dissolving his said injunction, and directing the sale to be for ten per cent. cash, and the balance in three equal annual instalments, with interest ; and this decree reiterates the decree of February 7th, 1877, as to the balance of purchase-money due from Utz, to be " $2,746.90, as of the 18th of January, 1877— all principal " ; and declares that the re-sale ordered to be made is for the purpose of paying that balance. Under this decree the said lot and improvements in Charlottesville was sold September 13th, 1879, to C. H. Harman, for $2,510 ; and this sale was confirmed by the court; and by final decree in the cause, entered October 13th, 1881, the said James D. Jones, commissioner, was authorized and directed to collect of Utz, or his surety Wells, so much as remains due on their bonds, " to be ascertained by giving said Utz credit for the proceeds of re-sale, less the costs and expenses of this suit, which

have resulted from the default of the said Utz." Afterwards, on the motion of the said Utz, the said court, by an order entered May 24th, 1887, ascertained and fixed the balance due on the first of the said judgments—the only one involved in this case—to be $647.97, with interest from September 13th, 1879 ; and to enforce the lien of this judgment to the extent of this said balance due on it, ascertained and fixed by the decree of the court in the cause, upon and against the real estate owned by Wells at the time it was docketed, the appellee, Jones, filed his bill at the August rules, 1887, in the hustings court of Manchester.

The appellants contest this lien on various grounds, and assign as error that the "judgment was *coram non judice,* null and void."

This contention is not tenable. The circuit court of Albemarle is and was a court of general jurisdiction to render judgments on bonds generally. The subject-matter—the bonds— were within its jurisdiction, as were the parties—obligors and obligees. The obligors lived within the county of Albemarle, and were regularly summoned and made no defense. Even if the judgment was erroneous, it would not be void; and it cannot be collaterally assailed. The declaration shows on its face proper matter for the jurisdiction of the court, and profert is made of the bonds; and the statute law (section 3260, Code of 1887) provides that, in such case, "no exception for want of such jurisdiction shall be allowed, unless it be taken by plea in abatement." This is sufficient; but see 2 Howard U. S. R. 319; *Pierce* v. *Graham,* 85 Va. (Hansbrough) 227; *Pugh* v. *McCue,* 86 Va. (Hansbrough) 475; *Cabell* v. *Cox,* 27 Gratt. 182.

The next assignment of error is that there was a misapplication of payments, and of the proceeds of the re-sale of the property ; and it is contended that, notwithstanding the fact that the payments made by Utz, and the proceeds of the re-

sale of the property for Utz's default in paying the purchase-money, were all applied under the supervision and approval of the court, and with the express approval of Utz, in the decree of February 10th, 1879, the purchaser from Wells now has the right to overhaul and reverse all the proceedings. There was but one debt, and that for purchase-money due the court by Utz, the purchaser, who made the payments from time to time, which were applied to the payment of overdue purchase-money for land, the title to which had been retained in the court. Utz not only gave no directions for the application of the payments, but did expressly consent to the action of the court, the trustee, and commissioner. The debtor, the creditor, and the court all concurred in the application of the payments and of the proceeds of re-sale of the property to the satisfaction of overdue purchase-money in default. Wells was surety on all the bonds, and it was of no consequence or concern to him how the application of payments and proceeds of re-sale was made to the one whole debt for purchase-money overdue and in default. His vendee must stand in his shoes; and between the appellee and such vendee there are no equities or privity. *Coles* v. *Withers*, 33 Gratt. 186, 3d syl. It does not appear that the appellee knew of the alienation by Wells until he brought his suit to subject the land to the lien of the recorded judgment, of which Wells' vendee had knowledge when he bought the land in November 1874, while the judgment lien was docketed January 15th, 1873.

It is contended that the contract of the surety was altered or violated in its spirit by permitting Utz, the purchaser, to pay his purchase-money in irregular amounts and at irregular periods. Besides the express sanction of the court, in its orders of May term, 1873, and May term, 1875, the commissioner, Jones, did what every commissioner of a court for the collection of land bonds is continually in the habit of doing—

collected, from time to time, as much of the overdue purchase-money as he could induce Utz, the purchaser of the land, to pay, and thereby collecting and getting what otherwise he could not get from the defaulting purchaser without a sale of the land—a mere forbearance, without consideration therefor, and for no definite delay or postponement. The original decree for a sale was made in 1866, and no adequate purchaser could be found, and the sale was not effected, till 1869, although persistent efforts were made by public offerings and by land agents; and Jones testifies, in his deposition in the cause, that he never relaxed his efforts to effect a sale or to get a purchaser, and that if he had, at any time, gotten an adequate offer for it, he would have reported it to the court. But Wells was the father-in-law of Utz, and an inmate of his family, and was fully informed of the failure to effect a sale of the property, upon which he lived, and he had the right to call upon the commissioner or the court to expedite and force a peremptory sale; and, failing to do so, he cannot now be heard to complain of the delay. There is nothing to show that the property in Charlottesville, upon which Utz and Wells resided, would have brought, at any time after the date of Wells' sale of the Manchester property to Matthews, any more than it did bring when sold; while the record shows that, meantime, the purchase-money debt, for which it was decreed to be re-sold, was reduced by intervening payments; and even when, in 1878, the property was advertised to be sold under the decree, the sale was enjoined by the appellants. But even if it were true, as expressly it is not, that the commissioner, Jones, expressly promised to indulge Utz for a definite time, it is not pretended that such promise or such action was based on a valuable consideration; and it was, therefore, *nudum pactum.* The principal debtor's paying a part, or promising to pay the whole debt, which he was bound to pay, is no consideration. 5 Rob. Practice 785;

*Tunstall* v. *Withers*, 86 Va. (Hansbrough) 900 ; *Alexander* v. *Byrd*, 85 Va. (Hansbrough) 690 ; *Cole* v. *Ballard*, 78 Va. (Hansbrough) 139 ; *Updike* v. *Lane*, 78 Va. 132.

In *Humphrey* v. *Hibb*, 6 Gratt. 527–'8, the court said : " The surety, instead of performing his duty of paying the debt, would be tempted to lie in wait for some slip or indiscretion on the part of the creditor, and even to stimulate his principal to solicit from the creditor an imprudent indulgence. Such a principle would, in effect, destroy the discretion and impair the rights of the creditor. He would be obliged to disregard all the dictates of humanity in the pursuit of his debtor. He would not venture to exercise his judgment in the management of his process, though a timely indulgence might accomplish what would be beyond the reach of a vigorous prosecution."

The indulgence, to have the effect of releasing the surety, must be shown to have been given in pursuance of a binding, legal contract, upon a valuable consideration, and without the consent of the surety.

The last error assigned in the petition is that the court should have determined whether the part of the Manchester lot conveyed by Wells to Dooley was liable before the part which was sold to Matthews was liable. This is what the court did substantially do, for the Matthews part, which was conveyed to him by Wells in 1874, was subjected to the lien, to the exoneration of the Dooley parcel, which was conveyed to Dooley by Wells in 1871. Besides, there was simply an exchange between the parties of small strips of adjoining lots, and the conveyance by Wells to Matthews embraced the strip conveyed by Dooley to Wells in exchange.

Although the circuit court of Albemarle, upon the notice and motion of Utz, had ascertained and fixed, by its decree, the final balance due on the judgment involved here, yet the hustings court of Manchester undertook to re-apportion and

re-apply the net proceeds of the re-sale of the Charlottesville property, and thereby arrived at a result slightly variant from that of the circuit court of Albemarle county, to the prejudice of the appellee; and of this the appellee predicates error, and asks to have it corrected under Rule IX. of this court. But, as the appellee acquiesced in this at the time, and as the record does not furnish the exact data upon which to test and base the correction, we are of opinion to affirm the decree of the hustings court of Manchester without error.

DECREE AFFIRMED.