## Staunton.

**EASTERN PUBLIC SERVICE CORPORATION, FORD AND FORD COMPANY, INC., TOWNS BUS LINE, INC., v. E. M. FUNKHOUSER.**

September 19, 1929.

Absent, West, J.

The opinion states the case.

*Cocke, Hazlegrove & Shackelford,* for the appellants.

*Woodrum, McCauley & Parsons* and *W. J. Henson,* for the appellee.

PRENTIS, C. J., delivered the opinion of the court.

This is a voluminous record but the controlling facts are few. There are no novel questions of law involved, but there is much confusion because of the many details as to the transactions which are immaterial and do not affect the substantial rights of the parties.

The outstanding facts are that the three appellant corporations were so closely allied as to be practically one; that the management and operation of all three was intrusted to one man, Homer P. Ford, who had a large financial interest in them; he controlled Ford and Ford Co., Incorporated, Ford and Ford controlled Eastern Public Service Corporation, which in turn controlled Towns Bus Line, Incorporated; that large amounts of money were needed which could not be borrowed through the ordinary channels, and so Ford, acting for the corporations, was forced to borrow at one time $75,000.00, and at another $50,000.00, from the appellee, E. M. Funkhouser, who charged large sums as compensation to himself, which he deemed only commensurate with the great financial risk to which he subjected himself. There are allegations of fraud and duress, but the trial court has found that they are not supported by the testimony, and that this finding is correct there can be little doubt. If corporations could plead usury, the amount of the recovery would be greatly reduced or perhaps cancelled.

The Virginia statute, Code of 1919, section 5556, provides that "no corporation shall, by way of defense or otherwise, avail itself of any of the pro-

visions of the preceding sections of this chapter, to avoid or defeat the payment of any interest which it has contracted to pay; nor shall anything contained in any of said sections be construed to prevent the recovery of such interest, though it be more than legal interest, and though that fact appear on the face of the contract."

Funkhouser, the lender of the money, shows that in order to secure the first and largest loan of $75,000.00 he had to borrow the money from the bank upon his own credit, for which he paid six per cent. interest. The bonus charged seems to have been ten per cent. on the original loans, and additional sums upon default and renewal of the notes.

The assignments of error are five in number, but the first four, in varying form, make the same contention, which is that the court erred in holding that the notes now held by Funkhouser are valid enforceable obligations, according to their terms, against the appellants and Homer P. Ford, as drawers and endorsers thereof.

We think it sufficient to say that the evidence submitted is altogether insufficient to support the allegations of the bill. The facts found by the trial court are amply sustained by the record, and the conclusions of the trial judge, Hon. H. B. Gregory, based thereon, are legally sound. He has thus expressed himself upon the issues submitted to him:

"A detailed discussion of the evidence in this case is unnecessary in reaching a decision. A great volume of evidence was taken in the presence of the court by consent of all parties. Such consent is evidenced by a court order filed herein. Comprehensive briefs have been filed and every feature of the case has been covered.

"The Eastern Public Service Corporation will be

referred to as 'Eastern,' the Towns Bus Line, Incorporated, as 'Towns,' and Ford and Ford, Incorporated, as the 'Ford Company.'

"The Eastern is a bus operating corporation, organized in Delaware, owning and operating Towns along with other lines. Towns is a Virginia corporation, owned by Eastern, and is operating a line from Roanoke to Winchester, Virginia. The Ford Company is also a Delaware corporation, organized about the same time that Eastern was organized, and its sole purpose is the handling of securities for Eastern and acting as financial agents for Eastern. It is a trading corporation. This corporation owns a majority of the stock of Eastern, and Eastern owns all of the voting stock of Towns.

"Homer P. Ford was the president of the three complainant corporations, and the active manager of the three corporations. He alone directed and dictated the policies of these companies.

"In the original bill, Eastern alleges that a $36,000.00 note was executed on its behalf to Mr. Funkhouser under a mistake. There is no allegation of fraud or misrepresentation on the part of Mr. Funkhouser in this bill, but in the amended bill, the Eastern, along with the other complainants, charge Mr. Funkhouser with fraud, deceit, misrepresentation, extortion and duress in obtaining not only the $36,000.00 note (which has developed to be a $36,819.00 note) but practically all of the notes in which Mr. Funkhouser has held covering the transactions enumerated in the bills. It also charges that the notes now held by Mr. Funkhouser, as well as nearly all of the notes he has held, were executed without authority from the corporations.

"No doubt the Eastern has assumed inconsistent positions in the bill and amended bill. If it is true that the $36,000.00 note was executed under a mistake,

then it would certainly not be true that it was executed through fraud and duress or without authority, and likewise if it should be true that it was executed through fraud and duress, or with authority lacking, it would certainly not be true that it was executed through mistake.

"Three negotiable collateral notes are involved in this litigation:

"1. A negotiable collateral note, dated December 17, 1927, made by Eastern and payable to Ford & Ford, Incorporated, and endorsed by Ford & Ford, Incorporated, and due on or before January 15, 1928, in the sum of $36,819.00. There is placed as collateral with this note the entire common capital stock of Towns—fifty shares and operating contract; and this is the ordinary form of collateral note. This note is subject to four credits, which were paid during the month of February, 1928, and amounting to $21,500.00 leaving a balance due of $15,319.00.

"It will be observed that Towns is not a party to this note.

"2. A negotiable note, dated December 3, 1927, made by Towns Bus Line, Incorporated, payable to Eastern and by Eastern endorsed, and due on January 3, 1928, for $20,000.00.

"It will be observed that Ford & Ford, Incorporated, is not a party to this note.

"3. A negotiable note, dated January 3, 1928, made by Towns, payable to Homer P. Ford, and by him endorsed, and due in thirty days from date in the sum of $5,238.75.

"It will be observed that Eastern is not a party to this note.

"There is a provision in the collateral note for $36,819.00, that the excess proceeds of sale of the

collateral, after satisfying that note, may be applied to the payment of any other liability of the makers or endorsers.

"At the time that Mr. Funkhouser made the loan of $75,000.00, the financial position of Eastern was doubtful and insecure, and this loan was a hazardous one. This conclusion was reached after a careful reading of the evidence of Mr. Brown and Mr. Meriwether, two competent expert accountants. These two witnesses examined the books of the company and on their testimony alone the court would be justified in its conclusion, but the fact that this company, according to the evidence, had no assets that a bank would care to take as security for a loan, is conclusive that the financial condition of Eastern was not satisfactory. Naturally, any one lending money to such a company, under these conditions, was assuming a much greater risk than a bank would assume in making the ordinary loan.

"An argument with a great deal of force has been presented tending to show that the $75,000.00 loan was made to Ford & Ford, Incorporated, and not to Eastern. This position may be supported by the books of the Ford Company and the testimony of Mr. Brown. But on the other hand, the books of Eastern show that Eastern received practically all of the proceeds of this loan, either in money or by the payment of Eastern's obligations by the Ford Company. Something over $70,000.00 was traced directly into the hands of Eastern. All of the transactions of the Ford Company were had for the direct or indirect benefit of Eastern, and in securing this loan the Ford Company acted as agent of Eastern. This was the purpose of the Ford Company, according to the allegations of the amended bill, on page four.

"The stockholders and directors of Eastern are chargeable with notice of the fact that the books of this company show that it received the benefit of the $75,000.00 loan, and sufficient information is there to be found, if pursued, which will show that the money came from Mr. Funkhouser. Mr. Carney and Mr. Birmingham, both officers and directors of the Eastern, had actual knowledge of this loan, and they, with actual knowledge, and the other stockholders and directors charged with knowledge from the disclosures on the books, not only failed to repudiate Mr. Ford's act in securing this loan, if it was unauthorized, but on the other hand expressly ratified that act by the resolutions of the stockholders' meetings held in January, 1927, and January, 1928. No stockholder or director has ever questioned the alleged unauthorized act of Mr. Ford.

"The $50,000.00 loan was an obligation of Eastern's, and due Mr. Funkhouser. This is admitted by the complainants.

"On December 3, 1927, and December 17, 1927, the notes taken for $20,000.00 and $36,819.00, respectively, constituted a novation and merger of all prior transactions. Acceptance of these notes constituted a final settlement of the accounts of the parties and put at rest any question as to the amount due and the liability of the parties, provided that Mr. Ford was authorized to make and endorse the notes for the corporations, or his acts in so doing were ratified by the corporations. Into the $36,819.00 note was merged a note of $2,830.00 covering a certain purchase of stock.

"The status of the transactions at the time of the novation and merger of December 3rd and 17th, was changed by the further payments aggregating $21,-500.00 on the $36,819.00 note, leaving a balance due

thereon of $15,319.00. The status of the $20,000.00 note has remained unchanged.

"The doctrine of the application of payments does not apply. If it ever applied, it was wiped out by the novation and merger of December 3rd and 17th, as to all payments made before that time. The doctrine has not been brought in question, nor sought to be applied since that time.

"The books of Towns show the execution of the $20,000.00 note to Eastern, and that it was charged to Eastern at a time when Towns owed Eastern an amount in excess of $20,000.00, and that Towns got the benefit of it to the extent of retiring its indebtedness to Eastern by $20,000.00. Eastern was benefited by Mr. Funkhouser's extension of time for the payment of the balance due him.

"If Mr. Ford was not authorized to make the endorsement on this note for Eastern, his act in so doing was certainly expressly ratified by the stockholders in their resolutions of January, 1928. But even if the resolutions ratifying Mr. Ford's acts had never been adopted, there is very good authority in Virginia that the failure of the corporation to disavow the unauthorized act of an agent makes the agent's act the act of the corporation.

"The Court of Appeals, in the case of *Winston* v. *Gordon*, 115 Va. 907, 80 S. E. 756, 760, approved the case of *Kelsey* v. *National Bank*, 69 Pa. St. 426, which reads: 'The law is well settled that a principal who neglects properly to disavow an act of his agent, by which the latter has transcended his authority, makes the act his own; and the maxim which makes ratification equivalent to a precedent authority is as much predicable of ratification by a corporation as it is of ratification by any other prinicpal, and it is equally to be presumed from the absence of dissent.'

"Mr. Funkhouser, if the contention of complainants is true, has held the fifty shares of Towns stock, and the $36,819.00 note since October 15, 1927, at which date the note was paid in full, according to complainants, and until the amended bill was filed on March 29, 1928, for more than five months according to complainants, Mr. Funkhouser has held the note and stock wrongfully, yet they have not during all this time, called upon him to cancel the note and return the stock, which was and is the principal asset of Eastern. If the note had been paid in full, we must be forced to the conclusion that the importance of the manual possession of the stock certificates would have impelled Eastern to have demanded the stock and the note at the time the note was paid in full, or within a reasonable time thereafter. This is certainly a very strong circumstance tending to show that Eastern knew about the note and did not regard it as having been paid, nor that it was entitled to a return of the stock. Ratification, according to *Winston* v. *Gordon*, *supra*, may be 'presumed from the absence of dissent.' This case further holds that 'an act of an agent, from which he derives no personal benefit, but which is done in good faith, for the benefit of his principal, and which was apparently necessary and would redound to his benefit, will be held to have been ratified and acquiesced in and thereby rendered valid upon slight evidence. This doctrine is applicable to corporations as to other principals.'

"Mr. Ford derived no personal benefit from the loans, and his actions were *bona fide* and redounded to the benefit of Eastern. The money was absolutely necessary to the existence of Eastern, and from the evidence it is apparent that the loans from Mr. Funkhouser prevented financial disaster.

"A much stronger case is made here. The Eastern not only failed to 'dissent or disavow' the alleged unauthorized acts of Mr. Ford, the president, but actually ratified those acts expressly by its resolutions.

"The note for $5,238.75 was made by Towns and payable to and endorsed by Homer P. Ford. This note was given for stock in Eastern formerly belonging to Mr. Funkhouser's mother, and the stock has never been actually delivered. If this stock had been bought by Mr. Ford for his personal account, I do not understand why he would have signed Towns' name to the note. It is claimed that by fraud and duress Mr. Ford was induced and compelled to execute the note, but I find no evidence of any fraud or duress in the record of this case. The entries on the books of Towns must be resorted to to visualize the transactions. Towns on its books has recognized the transactions as its own, and is liable on the note as maker and Mr. Ford is liable as endorser.

"At the annual meeting of stockholders in January, 1927, and again in January, 1928, all acts and doings of the officers and directors of Eastern performed since its organization were ratified, approved and affirmed. If the officers and directors performed only authorized acts, then these resolutions would have been unnecessary. The sole object and purpose of such ratifying resolutions were to validate unauthorized and invalid acts of officers and directors.

"Authorized acts needed no ratification.

"These resolutions, standing alone, are sufficient to bring home to all stockholders and directors knowledge that some officer or director had exceeded his authority and performed some unauthorized act on behalf of the company which needed a validating resolution confirming the act and making it the act of the corporation.

██ "A corporation may lawfully contract to pay a bonus or additional compensation for the use of money and such contract is valid and enforceable. An invalid act of an officer in contracting to pay a bonus or additional compensation for the use of money for a corporation may by proper resolution be validated and binding on the corporation to the same extent as if it had been expressly authorized in the beginning. And in this case the decision of the court is that if Mr. Ford was not expressly or impliedly authorized to agree, on behalf of the Eastern, to borrow the $75,000.00 and execute the bonus or compensation notes to Mr. Funkhouser for the use of the money, yet his acts and doings in this connection were certainly expressly ratified, approved and affirmed by the stockholders' resolutions of January, 1927, and January, 1928, after the stockholders had knowledge of the transactions.

"The entire record in the case of the *Citizens' Ice Company* v. *Markley, et als*, decided in this court, has been carefully read. That case is not in point; there not only was no evidence of any ratification by the directors, but, on the other hand, witness Chaney, and others, testified affirmatively that the act of Zeeber, vice-president, had been repudiated by the directors from the beginning, and they continued to repudiate it to the very time of suit.

"The case of *Stanley* v. *Franco, etc.*, 97 Misc. Rep. 401, 161 N. Y. Supp. 365, 367, may be distinguished from the case now under consideration. Quoting in the brief of complainant, which contains the opinion of this case on page five (appendix of brief), this is said: 'But there is no evidence of ratification, for it does not appear that the directors knew, or that the books of the corporation showed, the rate of interest, * *.' On this point the decision was based.

"The books of the three corporations have been manipulated to such an extent that it is difficult to obtain an intelligent view of the various transactions. While it is true there seems to have been an attempt made to keep the books separately, yet the entries and cross-entries are so mixed and intertwined that an accountant cannot balance one set of the books without examining the other two sets. Forced balances have been made to adjust accounts and entries shifted from one account to the other without apparent reason. The Eastern was the parent or holding corporation, while Towns was subsidiary of Eastern, and Ford & Ford was Eastern's agent in financial matters. It is true that each corporation was a distinct and separate entity, in the sense that each had its own charter and board of directors, and there were different stockholders, yet Mr. Ford was the managing and directing head of the three, and each corporation was dependent upon the other for its financial existence and success. The three corporations constituted but one family, with Mr. Ford at its head.

"The defendant, E. M. Funkhouser, may have a personal decree against the Eastern Public Service Corporation, as maker, and Ford & Ford, Incorporated, as endorser, on the $36,819.00 note, for the balance due thereon of $15,319.00, with interest and the attorney's fee provided in the note.

"He may also have a personal decree against Towns Bus Line, as maker, and Eastern Public Service Corporation, as endorser, on the $20,000.00 note, with interest claimed thereon from its due date.

"He may also have a personal decree against Towns Bus Line, Incorporated, and Homer P. Ford, endorser, on the $5,238.75 note, with interest claimed thereon from its due date, on condition that he deliver to this

court for Towns Bus Line the certificate of stock of Eastern, which he sold to Ford.

"He may subject to sale the stock which he now holds of Towns Bus Line as collateral for the $36,819.00 note, and the proceeds shall first be applied to the balance due on the judgment awarded on this note, and second to the payment of the judgment awarded on the $20,000.00 note, and the excess shall be returned, after the payment of costs to Eastern.

"Mr. Funkhouser having a lien by way of attachment on an automobile belonging to Homer P. Ford, and the attachment proceeding having been consolidated with this cause, that lien may be judicially established and enforced in this suit."

In addition to the facts so found by the trial judge as to the implied authority of Ford, and the acceptance of the benefits of his contracts and the express ratifications thereof, it appears that the by-laws of Ford & Ford, Incorporated, and of the Eastern Public Service Corporation, which are identical, expressly authorize the transactions here so earnestly, ably and vigorously attacked. These by-laws, so far as is immediately pertinent, read: "The president shall * * * make and sign contracts and agreements in the name and behalf of the company, and while the directors and the executive committee are not in session he shall have general management and control of the business and affairs of the company."

■ The fifth assignment of error is to the effect that the court erred in considering and treating as a part of the evidence a statement in the form of a letter from T. D. Meriwether, addressed to E. M. Funkhouser, dated June 4, 1928, the day the taking of evidence was concluded, which was not presented until the day set for argument, June 29, 1928, and no oppor-

tunity was had for cross-examination with respect to the matters therein contained.

Meriwether, the writer of this letter, was examined and cross-examined at length as a witness, and his letter may be stricken from the record without changing the result of this litigation in the slightest manner. It was understood when he left the witness stand that such a letter was to be written, and so far as we have discovered no desire for further cross-examination was expressed to the court when the letter was produced. In addition to this, the witness, Brown, introduced by the appellants, filed a similar paper over the objection of the appellee, with the understanding that Meriwether should be permitted to file the paper now questioned here. This assignment certainly presents no sufficient reason for the reversal of the decree.

Finally, it is claimed that the taxes due by Funkhouser upon these notes had not been paid. This was not called to the attention of the trial court. The appellee avers his willingness to pay the taxes, and the case will be remanded to the trial court for such further order as may be necessary to enforce their payment.

*Affirmed; remanded.*