# Richmond

## FIDELITY & CASUALTY COMPANY OF NEW YORK V. J. S. LACKLAND, ET AL.

April 8, 1940.

Record No. 2202.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Alexander H. Sands* and *Alexander H. Sands, Jr.,* for the plaintiff in error.

*Joseph F. Hall,* for the defendants in error.

EGGLESTON, J., delivered the opinion of the court.

On August 22, 1927, C. S. Luck & Sons, Inc., entered into a written contract with the Commonwealth of Virginia, through the State Highway Commission, for the construction of a certain road in Rockingham county, near Elkton. On the same date the contractor, as principal, executed the usual bond with Fidelity & Casualty Company of New York, as surety, guaranteeing the payment of bills for labor and materials furnished on the work.

C. S. Luck & Sons, Inc., sublet the entire project to Allport Construction Corporation as subcontractor. During the months of October and November, 1927, the James River Concrete Pipe & Products Corporation furnished to the Allport Construction Corporation concrete pipe which was used in the work. It is admitted that the price of this material, $1,183.88, was due on February 1, 1928, and that no part thereof has been paid. In December, 1927, the Allport Construction Corporation was adjudicated a bankrupt. Subsequently in the liquidation of its affairs its general creditors received a dividend of 10% on their claims. The James River Concrete Pipe & Products Corporation filed no proof of claim and received no dividend.

After the failure of the Allport Construction Corporation, C. S. Luck & Sons, Inc., the general contractor, completed the work as required by its contract with the Highway Department.

On December 28, 1927, the James River Concrete Pipe & Products Corporation made demand upon C. S. Luck & Sons, Inc., for the payment of its claim. To this demand the general contractor, through its president, replied that litigation had arisen between it and the subcontractor and requested that pressure of the claim be withheld pending the outcome. Subsequently the Pipe Company placed its claim in the hands of an attorney who from time to time made demand on C. S. Luck & Sons, Inc., for payment. These efforts, however, were unavailing and finally, in 1933, C. S. Luck & Sons, Inc., went into liquidation.

In the meantime, on December 24, 1927, the Pipe Company had written a letter to the chairman of the State Highway Commission enclosing a statement of the account showing the material furnished on the project and asking the name of the bonding company which had guaranteed the contract, in order that the claimant might notify the latter of the outstanding account. The chairman of the Commission replied that the State's contract was with C. S. Luck & Sons, Inc., and that the bond given by it did not cover the payment of material which had been furnished by the claimant to the subcontractor.*

During the next twelve months the State Highway Department paid to C. S. Luck & Sons, Inc., in various instalments, the full amount of the contract price for the work, or approximately $150,000.

In 1932 the James River Concrete Pipe & Products Corporation discontinued business, and on May 31, 1937, its charter was revoked by the State Corporation Commission for failure to pay the franchise tax and registration fee assessed against it for the two preceding years.

*This was prior to the decision in *Fidelity & Casualty Co.* v. *Copenhaver Co.*, 159 Va. 126, 165 S. E. 528.

On October 6, 1937, J. S. Lackland, A. F. Martin, O. E. Obershain, W. J. Martin, L. R. Markham, and W. R. Allen, as directors and trustees for the defunct James River Concrete Pipe & Products Corporation, under the authority of Code, section 3812, as amended by Acts 1936, ch. 198, filed their notice of motion for judgment against the Fidelity & Casualty Company of New York, seeking to recover on the bond for the price and value of the material furnished and used on the project.

The defendant surety company filed three special pleas asserting the defenses that, (1) the claim was barred by the three-year statute of limitations; (2) the James River Concrete Pipe & Products Corporation was estopped by its *laches* to recover on the bond; and (3) the plaintiffs, as directors and trustees of the defunct corporation, had no right to institute the suit.

The plea of the statute of limitations and the plea challenging the right of the directors to bring the suit were stricken out on the motion of the plaintiffs, a jury was empaneled and the case proceeded to trial upon the third plea.

At the trial it developed that prior to the revocation of its charter the James River Concrete Pipe & Products Corporation had sold all of its assets, including this claim, to J. S. Lackland, Walter J. Martin, administrator of the estate of A. F. Martin, deceased, Walter J. Martin, W. R. Allen, L. R. Markham, and Otho Lipes. Thereupon counsel for the plaintiffs was permitted, over the objection of the defendant, to endorse on the notice of motion for judgment the names of the real parties in interest and the fact that the action was being maintained for their benefit. Since counsel for the defendant was taken by surprise, a mistrial and continuance were ordered on his motion.

Subsequently the matter again came on for trial and at the conclusion of all of the evidence the court struck the defendant's evidence in support of its plea of estoppel by *laches*. A verdict and judgment for the plaintiffs followed.

The first assignment of error challenges the action of the court in not sustaining the plea of the three-year statute

of limitations. The argument is that the material was furnished by the James River Concrete Pipe & Products Corporation to the Allport Construction Corporation on open account; that since the right of action on the open account was barred after three years (Code, section 5810), and since the surety is entitled to every defense available to the principal, action on the bond, which merely guarantees the payment of the account, was likewise barred by the three-year limitation.

There is a conflict of authority as to whether an action to recover on a contract of guaranty or suretyship may be successfully defended by showing that the claim against the original debtor has been barred by the statute of limitations. 24 Am. Jur., Guaranty, section 43, p. 903; 50 C. J., section 312, p. 188; Williston on Contracts, Rev. Ed., Vol. IV, section 1231, p. 3528, and notes; 122 A. L. R., p. 205, note; *Weems* v. *Carter* (C. C. A. 4), 30 F. (2d) 202, 203.

Some authorities hold that it would be inequitable to require the surety to pay the debt after the creditor's claim against the debtor has been barred by the statute of limitations, because, it is said, the surety's right of reimbursement against the debtor has likewise been barred. See *Auchampaugh* v. *Schmidt*, 70 Iowa 642, 27 N. W. 805, 59 Am. Rep. 459; *Mulvane* v. *Sedgley*, 63 Kan. 105, 64 P. 1038, 55 L. R. A. 552.

It is not necessary that we decide whether the surety's right of reimbursement in the instant case has been barred by the statute of limitations, for, even if it be true, that is a situation which the surety could have avoided. Before the claim was barred it could have paid the debt and sued for reimbursement, or it could have required the creditor to sue by giving it notice under Code, section 5774. It did neither.

Again, some of the courts which hold that the running of the statute of limitations against the principal debtor discharges the guarantor or surety of liability, base this conclusion upon the theory that there has been an extinguishment of the debt by the bar of the statute, and that, there-

fore, the guarantor or surety is released. Typical of these are *Bass* v. *Harkreader*, 162 Tenn. 518, 39 S. W. (2d) 275; *Bridges* v. *Blake*, 106 Ind. 332, 6 N. E. 833; *Pacific Elevator Co.* v. *Whitbeck*, 63 Kan. 102, 64 P. 984, 88 Am. St. Rep. 229.

■ It is settled in this State that the running of the statute of limitations merely bars the creditor's remedy but does not extinguish the debt. *Smith's Ex'x* v. *Washington City, etc., Co.*, 33 Gratt. (74 Va.) 617, 620, 621; *Virginia Hot Springs Co.* v. *McCray*, 106 Va. 461, 474, 56 S. E. 216, 10 L. R. A. (N. S.) 465, 10 Ann. Cas. 179.

■ Consequently in *Manson & Shell* v. *Rawlings' Ex'rs*, 112 Va. 384, 71 S. E. 564, this court adopted the view that a surety is not released because the claim against the original debtor has been barred by the statute of limitations. In that case a judgment had been obtained against the principal and the surety. Before the institution of proceedings for enforcement it was barred against the estate of the principal debtor by Code, section 6477. The surety claimed that therefore it was barred as to him. The syllabus thus summarizes our holding with respect to this contention:

*"Principal and Surety—Judgments Against—Limitation of Actions.*—At law, the creditor rests under no obligation to look to the principal or to his property, or to exhaust his remedies against him before resorting to the surety. He may collect his debt out of either, and, where judgment has been recovered against both, though it may be barred as to the principal, it is not for that reason merely barred as to the surety. No length of time short of the period prescribed by the act of limitations will bar the right of the creditor to enforce his judgment against the surety, or his estate. The judgment must be barred as to the *surety himself*, to produce that result."

In *Weems* v. *Carter, supra*, the Circuit Court of Appeals for the Fourth Circuit adopts the reasoning in *Manson & Shell* v. *Rawlings' Ex'rs, supra*, and holds that it is in accordance with both the weight of authority and the better reasoning. See also, Williston on Contracts, Rev. Ed., Vol.

IV, section 1231, p. 3528; 122 A. L. R., p. 205, note, and cases there cited.

Moreover, it should be observed that the present suit is brought, not on the open account but on the bond itself, as to which the ten-year limitation applies. Code, section 5810.

Code, section 6263, provides that, "In an action or motion, founded on contract, against two or more defendants, although the plaintiff may be barred as to one or more of them, yet he may have judgment against any other or others of the defendants, against whom he is not so barred." See *Manson & Shell* v. *Rawlings' Ex'rs, supra.*

We think the trial court correctly ruled that the plaintiffs' claim was not barred by the three-year statute of limitations.

The next contention of the Surety Company is that the claim is barred by *laches* in that the James River Concrete Pipe & Products Corporation failed to file a proof of claim against the bankrupt estate of Allport Construction Corporation, failed to collect its claim from the general contractor, C. S. Luck & Sons, Inc., and delayed the institution of this suit against the surety until long after the proceeds received by the general contractor from the State Highway Department had been dissipated.

We need not stop to consider whether the Pipe Company exercised the proper degree of diligence in attempting to collect its claim from the general contractor, C. S. Luck & Sons, Inc. Certainly there is evidence that it attempted, without avail, to do so. It may be observed in passing that it furnished the material to the Allport Construction Corporation and not to the general contractor. Therefore, outside of the bond it had no claim on the general contractor, and prior to the decision of this court in 1932 in *Fidelity & Casualty Co.* v. *Copenhaver Co.*, 159 Va. 126, 165 S. E. 528, it was at least debatable as to whether the bond executed by the general contractor, as principal, guaranteed the payment of material furnished to the subcontractor.

But, aside from that, it is well settled that the mere delay of a creditor to enforce his claim against the principal

debtor does not discharge the surety for the reason that the latter might have paid the debt and sued the principal himself, or else, by giving the creditor notice under Code, section 5774, he might have required the creditor to sue within a reasonable time under the penalty of losing his claim against the surety. Williston on Contracts, Rev. Ed., Vol. IV, section 1231, p. 3528; Stearns on Suretyship, 3d Ed., section 95, pp. 131-132; 50 C. J., section 280, pp. 172, 173.

In the recent case of *Ward* v. *Bank of Pocahontas,* 167 Va. 169, 179, 187 S. E. 491, 495, we said:

" 'It is perfectly well settled, and has been very properly conceded in the argument, that a surety is not absolved by the want of diligence on the part of the creditor in regard to his demand against the principal debtor. A defense on the ground of mere *laches* would, indeed, be inconsistent with the relation of the parties.' *Humphrey* v. *Hitt,* 6 Gratt. (47 Va.) 509, 523, 52 Am. Dec. 133; *Wells* v. *Hughes' Ex'r,* 89 Va. 543, 16 S. E. 689; *Coleman* v. *Stone,* 85 Va. 386, 7 S. E. 241.

"A surety can never charge a creditor with *laches* until he has in vain prompted the creditor to pursue the principal. The creditor need not move until he has been notified. *Coles' Adm'r* v. *Ballard,* 78 Va. 139; *Alexander* v. *Byrd,* 85 Va. 690, 8 S. E. 577; *Manson & Shell* v. *Rawlings' Ex'rs,* 112 Va. 384, 71 S. E. 564.

"Indeed the Code itself tells us what an endorser must do when he desires action where a right of action has accrued. He must give notice of his desire in writing to the creditor. Code, section 5774."

It is likewise well settled that the failure of the creditor to file a proof of claim in bankruptcy against the debtor's estate does not release the surety. *Ward* v. *Bank of Pocahontas, supra* (167 Va., at pages 179, 180, 187 S. E., at page 495) ; 21 R. C. L., section 84, p. 1040; 50 C. J., section 283, pp. 174, 175; Williston on Contracts, Rev. Ed., section 1231, p. 3528.

 The Surety Company next contends that when the James River Concrete Pipe & Products Corporation held up

the enforcement of its claim against C. S. Luck & Sons, Inc., pending the determination of the litigation between the general contractor and the subcontractor, this amounted to such an extension of time of payment of the claim as released the surety from its obligation.

It is not necessary that we review in detail the evidence on this phase of the case. Suffice it to say that both the verbal and documentary evidence show that the general contractor requested the creditor not to press its claim pending the outcome of the litigation with the Allport Construction Corporation, and this indulgence was granted. But the forbearance was purely voluntary, was without consideration, and was for no definite time. The creditor could have ceased its indulgence and sued at any time. It is well settled that a mere indulgence of this character does not constitute such an extension of time as to release the surety or guarantor. *Coleman* v. *Stone,* 85 Va. 386, 388, 7 S. E. 241; *Wells* v. *Hughes' Ex'r,* 89 Va. 543, 549, 550, 16 S. E. 689; *Livermon* v. *Floyd,* 155 Va. 940, 950, 157 S. E. 146; *Hofheimer* v. *Booker,* 164 Va. 358, 367, 180 S. E. 145, 148; Williston on Contracts, Rev. Ed., Vol. IV, section 1222, p. 3513, section 1226, p. 3520.

The Surety Company next complains of the action of the trial court in striking its plea which alleged that the plaintiffs had no right to institute the present suit as directors and trustees of the James River Concrete Pipe & Products Corporation.

As has been stated, the record shows that on May 31, 1937, the charter of this corporation, which was incorporated under the laws of the State of Virginia, was revoked and annulled for failure to pay the registration fee and franchise tax assessed against it for the two preceding years.

Code, section 3812, as amended by Acts 1936, ch. 198, p. 336, provides that, "Upon the dissolution, expiration or revocation by operation of law of any corporation, the directors or other governing body, by whatever name it may be known, unless action to the contrary be taken as provided in the following section, shall be trustees thereof, with full

power to settle the affairs, collect the outstanding debts, sell and cause to be conveyed property, real and personal, and divide the money and other property among the stockholders, according to their respective rights, after paying its debts."

The present suit was instituted by the directors of the defunct corporation under this section.

It is the contention of the Surety Company that the revocation of the charter of the corporation for the failure to pay its registration fee and franchise tax did not work a "dissolution" of the corporation within the meaning of Code, section 3812, as amended, and hence, it says, the plaintiffs had no right to proceed thereunder.

Sections 210 and 211 of the Tax Code, as amended, Code 1936, Appendix, p. 2464, provide that the failure of a domestic corporation to make payment within the prescribed time of its registration fee and franchise tax shall "operate without further proceedings as a revocation and annulment of the charter of said corporation."

We think it is too plain for argument that the "revocation and annulment of the charter" of this corporation for the failure to pay its taxes, was a "dissolution, expiration or revocation by operation of law" of the corporation within the meaning of section 3812, as amended.

Error is assigned to the action of the trial court in permitting counsel for the plaintiffs during the progress of the trial, over the objection of the defendant, to endorse on the notice of motion for judgment the names of the assignees of the account sued on. It is claimed that this was the institution of a new suit after the bar of the statute of limitations. There is no merit in this contention.

Every interest which the defendant had was fully protected by endorsing on the writ or the notice of motion for judgment the statement that the action was brought for the use and benefit of the assignees. In numerous cases we have approved this practice. See *Clarksons* v. *Doddridge,* 14 Gratt. (55 Va.) 42, 46; *Hayes* v. *Virginia Mutual Protection Ass'n,* 76 Va. 225, 228, 229; *Fadeley's Adm'r* v. *Williams'*

*Adm'r,* 96 Va. 397, 399, 31 S. E. 515; *Consumers Ice Co.* v. *Jennings,* 100 Va. 719, 721, 722, 42 S. E. 879; *Smith* v. *Virginia Ry. & Power Co.,* 144 Va. 169, 178, 179, 131 S. E. 440; *Virginia Electric & Power Co.* v. *Mitchell,* 159 Va. 855, 865, 164 S. E. 800, 167 S. E. 424.

In *Smith* v. *Virginia Ry. & Power Co., supra,* Stratton, an employee of the power company, was injured in a collision with an automobile operated by Smith. After having been paid compensation under the Workmen's Compensation Act by his employer, Stratton sued Smith for damages for his injuries. Smith contended that since Stratton had been paid compensation and his employer had been subrogated to his rights, Stratton had no right to institute the suit in his name. The lower court permitted the plaintiff, over the objection of the defendant, to amend the notice of motion by inserting in appropriate places, "Virginia Railway & Power Company, who sues in the name of Willie Lee Stratton." The defendant contended that this was the institution of a new suit which was barred by the statute of limitations, since the accident out of which Stratton's injuries arose occurred more than one year prior to the date of the amendment.

We held (144 Va., at pages 178, 179, 131 S. E., at pages 442, 443) that while such amendment was appropriate it was not necessary, since it would have been proper to have endorsed on the writ or notice of motion for judgment the statement that the action of Stratton was for the benefit of the Virginia Railway & Power Company, as its interest might be shown. We also held that the endorsement there complained of was not the institution of a new action.

And, so, in the instant case the endorsement on the writ or notice of motion for judgment of the names of the assignees, the beneficial owners of the claim, was entirely proper and was not the institution of a new suit.

The next contention is that since the alleged sale of the account was not authoried by the formal action of the board of directors and stockholders of the corporation, it was invalid and was ineffectual to pass title to the assignees.

Even if this contention were true we fail to see how the defendant Surety Company would be benefited thereby. The claim sued on would still be the property of the corporation, and the action would have been correctly instituted in the first instance. The endorsement on the process would have been unnecessary.

But, aside from this, the record undoubtedly shows that the assignees are at least the beneficial owners of the account. The James River Concrete Pipe & Products Corporation had eight stockholders, all of whom were neighbors in a small community. Seven of them were endorsers on the corporate paper at a local bank when the corporation ceased doing business. One of the stockholders and endorsers, Kessler, died, and his personal representative wished to settle the estate and all parties in interest desired the rights and liabilities with respect to the corporation fixed. In an informal meeting, at which all of the directors except W. R. Allen, and all of the stockholders except Allen and Hobart Markham, were present, it was decided to sell all of the corporate assets including the accounts receivable at public auction, to apply the proceeds on the corporate debt at the bank, to prorate the liability of the endorsers, and to have the latter make their own arrangements with the bank. Allen was requested to attend this meeting but was unable to do so. However, he agreed to the plan. Hobart Markham, the other stockholder, likewise knew of the meeting and approved of and consented to its purpose.

At the public sale all of the stockholders and directors except Hobart Markham were present and consented to the sale of the accounts. The six living endorsers on the corporation's paper were the purchasers. The purchase money was applied on the corporate notes and the endorsers either paid their individual shares or substituted their new obligations for the corporation's debt to the bank. All of the debts of the corporation have been paid.

Moreover, both Allen and Markham testified in the instant proceeding and ratified and approved the sale of the account.

■ While it is true that the proposed sale of the account and its transfer was never ratified or approved by formal action of the board of directors or stockholders of the corporation, clearly the corporation itself is in no position to complain of the sale (*Moore* v. *Aetna Casualty & Surety Co.*, 155 Va. 556, 569, 155 S. E. 707), and does not, in fact, complain.

■ There are no creditors of the corporation who can complain and the rights of no one have been violated. To say the least, the assignees are the equitable owners of the claim sued on. Under the express provisions of Code, section 5144, they had the right to proceed to collect the claim in their own names or in the names of the holders of the legal title, who in the instant case are the directors and trustees of the defunct corporation.

■ Complaint is made of the action of the trial court "in persistently permitting plaintiffs to re-open their case."

It is unnecessary, we think, to review the incidents complained of. Suffice it to say that the court was indulgent to counsel for both sides in permitting the development of all of the pertinent facts. This was in the furtherance of justice and in the exercise of the trial court's sound discretion.

It is next said that there is a fatal variance between the allegations and proof, in that while the notice of motion alleged that the claim sued on had been assessed for taxation, the evidence showed that this was not true.

■ Section 69 of the Tax Code, as amended, Code 1936, Appendix, p. 2414, requires either an allegation in the pleadings or proof that a claim of this character has been properly assessed for taxation, or proof that the suitor is willing that the taxes be paid out of the first recovery on the evidence of the debt. Plainly the statute is a revenue measure and was not designed to entrap the unwary litigant or to release the debtor.

Moreover, the section authorizes the court, with the consent of the suitor, to provide in its judgment for the pay-

ment to the proper officer out of the first collection on the judgment of all taxes and penalties due on the claim.

In the instant case the plaintiffs testified at the trial below that they were willing to pay the necessary taxes. Their attitude is the same in this court. Under such circumstances the manifest purpose of the statute will be accomplished, we think, by remanding the case to the trial court for such further order as may be necessary to provide for the proper assessment and payment of such taxes. *Eastern Public Service Corporation* v. *Funkhouser,* 153 Va. 128, 142, 149 S. E. 503. It is so ordered.

For the reasons stated the judgment complained of is affirmed with costs.

*Affirmed and remanded.*