In re James & Nancy **COLBERT, Debtors.**

**FIRST AMERICAN BANK OF VIRGINIA, Movant,**

v.

**John G. LEAKE, Trustee, et als., Respondents.**

In re Allen & Alfreda **HAZARD, Debtors.**

**FIRST AMERICAN BANK OF VIRGINIA, Movant,**

v.

**John G. LEAKE, Trustee, et als., Respondents.**

**Bankruptcy Nos. 5–91–00133, 5–91–00154.**

United States Bankruptcy Court, W.D. Virginia, Harrisonburg Division.

June 24, 1991.

tailed filed its petition in bankruptcy under Chapter 11 on January 29, 1990, and was converted to Chapter 7 on January 28, 1991. The Colberts filed their joint petition under Chapter 7 on February 19, 1991. The Hazards filed their joint petition under Chapter 11 on February 22, 1991, and were converted to Chapter 7 on April 5, 1991. On April 8, 1991, First American Bank of Virginia (hereinafter FAB) filed a motion for relief from stay in both the Colberts' and Hazards' cases. Because the motions are based on the liability of the Colberts and Hazards under a continuing guaranty they executed for the Dovetailed debt, all parties agreed to hear and decide the motions together.

*Facts*

On February 21, 1986, Dovetailed executed two commercial notes to FAB, in the principal amounts of $400,000.00 and $800,-000.00. Movant's Exhibits C and D. These loans were secured by a deed of trust of the same date executed by Dovetailed, the Colberts and the Hazards covering three parcels of property, one each belonging to Dovetailed, the Colberts and the Hazards. Movant's Exhibit F. The loans were further secured by a security agreement between Dovetailed and FAB, covering the inventory of Dovetailed. The Dovetailed loans were also guaranteed by the Colberts and the Hazards through their execution of a continuing guaranty (hereinafter the Guaranty) on February 21, 1986. Movant's Exhibit E.

FAB did not properly perfect its interest in the Dovetailed inventory until ninety-four (94) days before Dovetailed filed its petition and this is what gives rise to the impairment of collateral agreement advanced by Shockey Realty Company (herein Shockey). Subsequent to FAB properly perfecting its lien in the inventory, the Colberts and the Hazards executed deeds of trust to Shockey Realty Company (hereinafter Shockey) on properties subject to the lien of the deed of trust in favor of FAB.

Basing its interest on the lien of the deed of trust from the Colberts and Hazards,

Dale A. Davenport, Harrisonburg, Va., for Colberts.

Bruce Downing, Winchester, Va., for Hazards.

Brian F. Kenney, Fairfax, Va., for Bank.

William E. Shmidheiser, III, Harrisonburg, Va., for Realty Co.

## MEMORANDUM OPINION

ROSS W. KRUMM, Bankruptcy Judge.

The matter for decision before the court is whether the failure to timely perfect a security interest in collateral is an unjustifiable impairment of collateral within Code of Virginia § 8.3–606, such that the objection to the motions for relief should be sustained.

*Background*

Dovetailed Enterprises, Inc. (hereinafter Dovetailed) is an entity in which James and Nancy Colbert (hereinafter the Colberts) and Allen and Alfreda Hazard (hereinafter the Hazards) are the principals. Dove-

Shockey filed motions to intervene and objected to FAB's motions for relief on the basis of impairment of collateral. FAB objected to Shockey's intervention and asserted that the defense of impairment had been waived. A hearing on FAB's motions and Shockey's motions to intervene was held May 3, 1991, in Harrisonburg, Virginia. After arguments by counsel for Shockey and FAB, the court held that the intervention would be granted, and set a briefing schedule on the issue of impairment of collateral. Both parties submitted authorities in support of their positions.

Shockey argues that FAB's failure to perfect its lien in the inventory was an impairment of collateral under Code of Virginia § 8.3–606(1)(b) and that the guarantors are discharged from any liability under the Guaranty. FAB argues that even if the failure to perfect was an impairment, the language of the Guaranty waived this defense.

### Law

The only documents executed by the Colberts and the Hazards in their individual capacities were deeds of trust on their respective personal real estate and the guarantees. The obligations which they guaranteed are the two notes of Dovetailed to FAB.

Code of Virginia § 8.3–606 provides as follows:

(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

■ There is no dispute that FAB is the holder of the Dovetailed notes. The first issue which must be resolved is whether the Colberts and the Hazards are parties to an instrument. The individuals did not execute the Dovetailed notes. Therefore, in order for Shockey to prevail under section 8.3–606, the guaranty which each couple executed must fall within the definition of instrument.

"Instrument" is defined in section 8.3–102(e) as meaning a negotiable instrument. Under section 8.3–104(1), a negotiable instrument must:

(a) be signed by the maker or drawer; and

(b) contain an unconditional promise or order to pay a sum certain ... and

(c) be payable on demand or at a definite time; and

(d) be payable to order or to bearer.

The guaranty of the Colberts and the Hazards in this case fails to qualify as an instrument in the following particulars:

1) Since the guaranty covers present and future obligations of Dovetailed it is not for a sum certain;

2) Since payment is conditioned upon default of Dovetailed the guaranty is conditional; and

3) The guaranty is not payable to order or to bearer.

The guaranty fails to meet all of the definitional requirements for a negotiable instrument under section 8.3–104(1) and is not an instrument under section 8.3–102(e). Since the Colberts and the Hazards could not be a "party to the instrument" this excludes section 8.3–606 from consideration of the release due to impairment of collateral argument advanced by Shockey. *F.D.I.C. v. Hardt*, 2 U.C.C.Rep.Serv.2d, 996, 1001, 646 F.Supp. 209 (C.D.Ill.1986). Because the Uniform Commercial Code is not applicable to the guaranty, Virginia law must be reviewed on the release issue.

■ The court finds no Virginia authority which speaks to the issue in the case at bar. However, in *Ward v. Bank of Pocahontas*, 167 Va. 169, 187 S.E. 491, 494–95 (1936), the Supreme Court of Virginia stated:

[A] surety is discharged, at least to the extent of the value of the security lost, where the creditor, without the surety's consent, affirmatively releases collateral security, but there seems to be some difference of opinion where a loss is claimed to have occurred through the inactivity of the creditor. The *general rule, however, is that in the absence of*

[redacted] 

*an express agreement to use diligence ... mere inaction or passive negligence on the part of the creditor in failing to take steps to secure the collection of his debt from the collateral security given to him by the principal debtor is not sufficient of itself to discharge or release a surety* ... (emphasis added).

*Ward* is not directly applicable since it deals with a creditors collection of a debt from collateral of the debtor. However, *Ward*'s analysis is helpful. It indicates that the court must look to the agreement of the parties to determine if they bargained for due diligence. There is no language in the guaranty in the case at bar which shows an express agreement of the parties that FAB use due diligence in perfecting its lien in assets of Dovetailed. In fact, there is express language to indicate that the parties agreed that FAB's collateral was not a factor at all in the liability which the guarantors incurred. For example the guaranty states:

> *The Bank is hereby expressly authorized .. without notice ... to give and make* such extensions, renewals, *modification,* indulgences, settlements and compromises ... with respect to said indebtedness and liabilities, *including the taking, releasing or modification of any other security* or guaranty ... *without in any manner affecting or impairing the liability of the undersigned* hereunder.
>
> ... It is further agreed that *the liability of the undersigned hereunder is independent of, and may be exercised regardless of the existence of, any other security* or guaranty or liability of any other party for the indebtedness.... (emphasis added).

The language quoted above shows that the parties intended that FAB could deal with the Dovetailed collateral as it wished without affecting the guarantors' liability. It would be "illogical to say that a failure to perfect a lien would lead to discharge of a guarantor when the lender could release any collateral without notice to the guarantor without affecting the liability of the guarantor." *Etelson v. Suburban Trust Co.,* 9 U.C.C.Rep.Serv. 1371, 1373–74, 263 Md. 376, 283 A.2d 408 (Md.1971). See also, *F.D.I.C. v. Hardt,* 2 U.C.C.Rep.Serv.2d 996, 646 F.Supp. 209 (C.D.Ill.1986).

Finally, the last quoted portion above is a clear statement that liability would exist regardless of "the existence of any other security." Thus, the language of the guaranty fails to reveal any specific agreement to use due diligence and, to the contrary, reveals an agreement for liability regardless of the existence of collateral. Therefore, the court finds that the Colberts and Hazards, as guarantors, waived any defense against FAB for a failure by FAB to perfect a lien in collateral given by Dovetailed. The objection of Shockey to FAB's motions for relief will be overruled.